W. SCHERMERHORNE *against* E. SCHERMERHORNE.

The words " rents and profits," in a devise, may be so construed, as to
authorize a sale of the land, when necessary, to raise a sum, so as
to effect the object of the testator.

As, where *J. S.* devised all his estate to his wife for life, and, after her
death, to his son *A.*, in fee, on condition, that he should comfortably
maintain *N.*, (a daughter of the testator,) who was a lunatic, during
her life ; and if *A.*, or his heirs, did not so maintain *N.*, then the ex-
ecutors were authorized to take possession of the land, and to " lease,
or by any other means, out of the *profits* therefrom arising, to support
and maintain *N.* during her natural life," &c.

The heir of *A.*, after his death, having refused to maintain *N.* : *Held,*
that in case the rents and profits proved insufficient, the land devised
might be sold for that purpose.

*March 21st.*        THE bill stated, that the plaintiff is the only acting ex-
ecutor of *John Schermerhorne,* who died in 1798, and, by
his will, dated the 9th of *January,* 1798, devised his es-
tate to his wife, for life, and, after her death, to his son,
*Abraham,* in fee, upon condition, that he, his heirs, &c.
after the death of his wife, should comfortably and reason-
ably support and maintain his daughter *Nelly,* during her
life, to the satisfaction of his executors ; and that in case
the executors, or the survivor of them, &c., should be of
opinion, that his son, *Abraham,* his heirs, &c., did not sup-
port or maintain his daughter, *Nelly,* according to the in-
tent of the will, they should be at liberty to take posses-
sion of the estate so devised to *Abraham,* after giving him
three months' notice, to deliver it up, *and lease, or by any
other means, out of the profits therefrom arising,* to support
and maintain his daughter *Nelly,* during her natural life ;
and, at her death, the estate should revert to his son, *Abra-
ham,* unless, upon such demand of possession, he, his heirs,
&c., should refuse, under all the said circumstances, to de-
liver up the possession as aforesaid, in which case it should

be a forfeiture by them, and the said estate, after the death of his daughter *Nelly*, shall be equally divided amongst the rest of his children, the said *Abraham*, and his daughter *Hannah*, excepted," &c. That the said *Nelly* is a lunatic, and is now of the age of 48, and has always been of a weak and imbecile mind. That the real estate consisted of a house, and fifteen acres of land, within two miles of the city of *Hudson*, and, at the death of the testator, was worth about 1000 dollars. That the personal property was about the value of 200 dollars, consisting of household furniture, &c., and no part of it ever came to the hands of the plaintiff. That the widow of the testator, at his death, took possession of the real and personal estate, and continued, until her death, to support *Nelly*. That the widow died on the 5th of *June*, 1809, and the son, *Abraham*, died in 1804, leaving the defendant, his only child. That the plaintiff qualified as executor on the 7th of *August*, 1807, but none of the personal estate came to his hands, it having been expended by the widow in the maintenance and support of herself and *Nelly*. That on the death of the widow, the premises were in good repair. The plaintiff leased them (with the exception of twelve acres, sold by order of the surrogate to pay debts) to *William Hardeck*, who boarded *Nelly* for the use of the same, until the 11th of *May*, 1816, when he refused any longer to maintain her for the use of the premises. That the plaintiff then took her into his family, where she has since remained. That all the rent the plaintiff has been able to collect, since *May*, 1816, amounted to 195 dollars, 37 cents; and that he has paid for taxes and repairs, during that time, 32 dollars, 29 cents, leaving 163 dollars, 8 cents. That the plaintiff had given notice to the defendant to take *Nelly*, and provide for her maintenance and support, according to the will, and she refused. That the premises are in such a ruinous condition, that no rent can be expected to be realized, unless they are put in good repair. That

1822.

SCHERMER-
HORNE
v.
SCHERMER-
HORNE.

the plaintiff is unwilling to support *Nelly* for the rent of the premises. *Prayer*, that the defendant be directed to take possession of the premises, and provide for her support, according to the will, or that the premises be ordered to be sold, and the plaintiff be authorized to apply the proceeds towards her support, and for general relief.

The answer of the defendant admitted all the material facts charged in the bill, and that she was upwards of 21 years of age, and the only child and heir of her father. She admitted, that the plaintiff called on her to provide for maintaining *Nelly*. She alleged, that she never received any part of the real or personal estate of the testator, or of the rents and profits. She admitted, that the rents and profits are liable for the maintenance of *Nelly*; but denied, that the estate she inherited from her father, was any further answerable, or that the fee or reversion could be sold.

*Bay*, for the plaintiff.

*E. Williams*, for the defendant.

The case was submitted to the Court, upon the pleadings and proofs, without argument.

THE CHANCELLOR. The defendant, as heir of *Abraham Schermerhorne*, refuses to maintain *Nelly*, the lunatic, and is willing that the plaintiff should possess the estate, and support *Nelly* out of the rents and profits. But she claims the reversion, after *Nelly's* death, and denies any right to have the estate sold.

It is evident, that the house and three acres of land, (being all the estate remaining, chargeable with the maintenance of *Nelly*,) is insufficient to maintain her, and are in a ruinous situation. The only serious point in the case is, whether the premises can be sold for the purpose of the charge. The plaintiff, as executor, was authorized, in a

certain event, to take possession of the estate. He has that possession; and he was further authorized to lease, "or, by any other means, out of the profits therefrom arising," to support and maintain *Nelly*, during her natural life. The great object of the will was the comfortable maintenance of that afflicted and unfortunate daughter; and the testator has shown a strong solicitude on that point throughout the will. The estate is charged with her maintenance, and it must be made to effect that object, if it can be done, by *any means to arise out of the profits*.

The word *profits*, says Sir *Thomas Plumer*, in *Allan* v. *Backhouse*, (2 *Vesey & Beam.* 65.) does, *ex vi termini*, include the whole interest, as a devise of the profits would pass the land itself; and it was held, in that case, that the words, *rents and profits*, extended beyond their natural meaning, by a technical, artificial, but liberal construction, established by a long train of decisions, and were held to mean, not merely annual rents and profits, but a *mortgage and sale*, when the same was necessary to raise a gross sum, and thereby effect the testator's object. This extension of the word " profits," is supported by a series of authorities, from the case of *Backhouse* v. *Middleton*, as early as the 22 *Car.* II. (1 *Ch.* Cases, 173.) down to the present time; and most of them are noted in the learned review, taken by the Vice-Chancellor. (*Lingon* v. *Foley*, 2 *Ch.* Cases, 205. *Trafford* v. *Ashton*, 1 *P. Wms.* 415. *Baines* v. *Dixon*, 1 *Vesey*, 41. *Green* v. *Belchier*, 1 *Atk.* 505.)

Lord *Hardwicke* observed, that if there be no other words to restrain the meaning of " rents and profits," and confine them to the receipt of rents and profits, *as they accrue*, the Court, to obtain the end which the party intended, by raising the money, has, by the liberal construction of the words, taken them to amount to a direction to sell. The raising, by rents and profits, was the same as raising by sale, when there was nothing to exclude a sale;

1822.

Sch...

The word " rents are profits," in devise, includes the whole interest.

1822.

SCHERMER-
HORNE
v.
SCHERMER-
HORNE.

though there was not one case in ten, as he said, where the Court had decreed a sale on the words rents and profits, that it had been agreeable to the testator's intention.

In the present case, the testator, no doubt, had it in contemplation that the rents and profits of the farm, without a sale, would be sufficient to support the lunatic, and that the estate, after her death, would go to *Abraham Schermerhorne*, and his heirs. But, his other intention was equally manifest, that his daughter must, at all events, be comfortably maintained out of the profits or proceeds of the farm ; and he expressly authorized " any means" by which the farm was to produce the requisite " profits." And, if that end cannot otherwise be obtained, it is the duty of the Court, in obedience to the long and uniform course of authorities, and to the necessity of the case, to direct a sale of the farm.

I shall, accordingly, declare, that the estate, in the pleadings mentioned, is charged with the comfortable and reasonable maintenance of *Nelly S.* ; and that, if the farm will not, upon lease, yield profits sufficient for that purpose, the same may, and ought to be sold, and the proceeds applied for her support ; and that a master be directed to inquire, and report, what annual sum is requisite for the comfortable and reasonable maintenance of *Nelly S.*, and what is the net value of the yearly rents and profits of the estate, as the same now exists, and may be rented.

*Decree accordingly.*