## SYLVANUS WALKER, Respondent, v. CARRIE D. DOWNER, Appellant.

*Devise of a farm, subject to a provision for the support of the testator's widow out of the proceeds and avails thereof, gives the widow a lien upon the crops.*

A testator, by his will, gave to his two sons, Byron G. Downer and John B. Downer,. jointly, the use of his farm, with all his personal estate, to be held and used by them, jointly, for the period of their natural lives, and to the survivor of them.. The gift was made subject to the following provision:

" I hereby direct and provide that out of the proceeds and avails of said farm they, or the survivor of them, in case one shall die before the other, shall support, care for and maintain on the said farm my wife, Maria Downer, and my daughter, Celestia Downer, in accordance with their circumstances and condition in life; and I hereby make their, and each of their, support a charge upon said farm."

Byron G. Downer, the survivor of the two sons, transferred to one Sylvanus. Walker, by way of mortgage, his title to the farm and the rents, issues, profits, and proceeds thereof, " after paying therefrom the necessary expenses of cultivating, tilling and running the same in a workmanlike manner, and after paying the necessary living expenses of my mother, Maria Downer, as provided in the will " of George W. Downer.

In an action of replevin, brought by Walker to recover the possession of certain crops consisting of oats, cabbage, straw and hay raised upon this farm:

*Held*, that the provisions of the will did not merely make the support of Maria. Downer a charge upon the land, but that she was entitled to her support out of the proceeds or profits thereof, and that the title which Byron G. Downer, and his grantee, Sylvanus Walker, had to all of the crops was subordinate to this lien of the widow.

That it was incumbent upon Walker, before asking the interposition of the court. in his behalf, to show that Maria Downer, the widow, had received her support according to her needs and circumstances.

Appeal by the defendant from a judgment of the County Court. of Monroe county, entered in the office of the clerk of the county of Monroe March 2, 1889, upon a verdict directed for the plaintiff by the court; and also from an order denying the defendant's motion for a new trial made upon the minutes of the court.

*C. M. Allen*, for the appellant.

*Turk & Barnum*, for the respondent.

Macomber, J.:

The action is replevin to recover possession of certain crops consisting of oats, cabbage, straw and hay, claimed by the plaintiff.

Upon the trial it was conceded by the plaintiff that the hay did not belong to him, and no recovery was had therefor. The right of the plaintiff, if any, to maintain an action for the recovery of the possession of this property is derived solely from an instrument in writing under seal, executed to him by one Byron G. Downer, bearing date the 17th day of May, 1884. By this paper Byron G. Downer transferred to the plaintiff all his right, title and interest in and to a certain farm of 110 acres in the town of Perinton, then occupied by Byron G. Downer, together with the rents, issues, profits and proceeds thereof, " after paying therefrom the necessary expenses of cultivating, tilling and running the same in a workman-like manner, and after paying the necessary living expenses of my mother, Maria Downer, as provided in the will" of George W. Downer, the father of Byron G. "This assignment is made as collateral security for the payment by me to the said Sylvanus Walker of the sum of $2,300 and interest, as follows: In annual installments of $300 each, payable on the first day of April in each year until the whole of said sum is paid, with annual interest payable April first in each year."

This instrument was a mortgage to secure to the plaintiff the payment of the sum of $2,300 and interest, as therein provided; it was not a deed of the land. All of these crops for which recovery was had in the court below, excepting the cabbage, were sown or planted by Byron G. Downer in his lifetime, but were cultivated and harvested by this defendant, his widow. They were undoubtedly emblements and belonged to Byron G. Downer, absolutely, and could have been transferred by him to the plaintiff, provided Byron G. Downer himself had an unincumbered title thereto. The important question, therefore, is whether Byron G. Downer had such an unconditional and unincumbered title, as life tenant, as would enable him, by the instrument already mentioned, to convey a legal title of these crops to the plaintiff.

Byron G. Downer was one of two sons of George W. Downer, the former owner of the land, who left a last will and testament bearing date the 14th day of June, 1876. By the second clause of this will he gave to his two sons Byron G. Downer and John B. Downer, jointly, the use of this farm, with all of his personal estate, to be held and used by them jointly for the period of their natural

lives and to the survivor of them. This gift, however, was made subject to the following provision: " I hereby direct and provide that out of the proceeds and avails of said farm they (or the survivor of them, in case one shall die before the other) shall support, care for and maintain on the said farm my wife, Maria Downer, and my daughter Celestia Downer, in accordance with their circumstances and condition in life, and I hereby make their and each of their support a charge upon my said farm." The son, John B. Downer, and the daughter, Celestia Downer, died before the execution of the assignment of Byron G. Downer's interest to the plaintiff. The widow, however, of George W. Downer is still living. After the death of Byron G. Downer, this defendant, his wife carried on the farm substantially in the same manner, so far as the evidence shows, as her husband had previously done; harvested the crops and deemed herself charged with the duty of providing for the support of her late husband's mother in accordance with the terms of the will. The plaintiff, standing upon what he deems to be a clear legal right, claims absolute title to these emblements, and has asserted the same by this action. In this we think he has mistaken his remedy.

The will of the husband of Maria Downer charged all of his real estate with the care and maintenance of his widow. This provision of the will did not merely make the support of Maria Downer a charge upon the land which could be enforced only by the sale thereof, as was done in the case of *Schermerhorne* v. *Schermerhorne* (6 Johns. Ch., 70.) The will before us goes further. Maria Downer was entitled to her support out of the avails arising from the proper management of the farm, and had a direct interest and lien upon the proceeds or profits thereof after paying the necessary expenses of cultivation. The title which Byron G. Downer had to all of the growing crops was subordinate to this paramount lien of the widow. He could convey no greater interest than he himself had, and could not give a legal title to the crops in advance of their harvesting, which would enable his transferree to maintain a purely legal action thereon. It was incumbent upon the plaintiff, before asking the interposition of the court in his behalf, to show that Maria Downer, the widow, had received ample support according to her needs and circumstances; then, if there remained anything over,

to ask the person who managed the farm to account therefor, after the death of Byron G. Downer and up to the time of harvesting and marketing these crops, over and above the necessary expenses for cultivating, tilling and managing the farm in a workmanlike manner. Such expenses would necessarily include a fair compensation to the persons cultivating the land. Maria Downer, it is true, is not a party to this action, and her rights could not be enforced herein, but this circumstance does not strengthen the plaintiff's case, for he must rely wholly upon the legality and sufficiency of his own title in order to maintain the action to recover the possession of this property, and not upon the want of title thereto by the nominal defendant. If these views be correct, it would be idle to grant a new trial, for by no amendment of the proceedings could the County Court be clothed with the necessary equitable powers to adjust the rights of all the parties interested in this action.

The judgment should be reversed, with costs, both in this and the County Court.

BARKER, P. J., and DWIGHT, J., concurred.

Judgment and order reversed, with costs, both in this and in the County Court.