DE NOTTEBECK and wife *against* ASTOR and others, exr's.

The grammatical construction of the language of a will or other instrument is not necessarily to prevail in its interpretation.

Thus, where, after bequeathing a sum to be equally divided among the six children of his daughter, the language of the testator was: "Also, I give to the said six children of my daughter, or to such of them as may survive me, one hundred thousand dollars of the public debt, called the water loan,
\*99] *to be paid to each on attaining their age of twenty-one years, and the interest of the shares of those under that age be accumulated for their benefit until that period, and in case any of them shall die before that age, without issue, then his or her shares shall go to the survivors;" *Held,* that this was a bequest of the $100,000 to the children collectively, and not of that amount to each.

De Nottebeck *v.* Astor, 16 Barb. 412, affirmed.

ACTION in the supreme court by Mr. De Nottebeck and wife against the executors of the will of John Jacob Astor to enforce payment of a legacy. The question was whether the amount of the legacy to Mrs. De Nottebeck was $100,000 or one-sixth of that sum.

Mrs. De Nottebeck was one of the six children of Dorothea Langdon, a daughter of Mr. Astor. In 1836 Mr. Astor made his will, by which, after various devises and bequests, among which were devises of real estate to each of the children of Mrs. Langdon, and bequests to others of sundry public stocks, he gave to each of the children of Mrs. Langdon two cash legacies, the one payable to them respectively on their attaining the age of twenty-four years, and the other when they respectively attained the age of thirty years. In January, 1839, a codicil to the will was made, by which the testator gave to his daughter Dorothea the income of $100,000, deposited in the New-York Life Insurance and Trust Company, during her life; and upon her death he gave "the said capital sum to her six children," who were named, "to be equally divided among them, and to be accumulated as to the share of each one under the age of twenty-one years, for his or her benefit,

before attaining the age of twenty-one years without surviving issue, "that his or her share should be given to the survivors." The codicil then proceeded as follows: " Also I give to the said six children of my daughter Dorothea, or to such of them as may survive me, one hundred thousand dollars of the public debt of the city of New York, bearing five per cent interest, usually called the water loan, to be paid to each on attaining their age of twenty-one years, *and the interest of the shares of those under that [*100 age to be accumulated for their benefit until that period; and in case any of them shall die before that age without issue, then his or her shares shall go to the survivors."

In 1847, the testator executed an instrument which recited that his grandson, Woodbury Langdon (being one of the six children of Mrs. Langdon mentioned in the will and codicil), was about to be married, and that the testator desired to advance to his use, for the maintenance of himself and family, a provision of $150,000, " to be not in addition to the provisions in his favor by way of legacy, under my will and codicil, but in anticipation and satisfaction of the same, according to the amounts thereof and of this present disposition," and by which the testator granted and transferred to trustees, $150,000 of the public debt of the state of Ohio, and directed them to apply the income thereof to the use of said Woodbury during his life, and after his death to distribute the principal among his children. The testator, at the same time, by an instrument containing a similar recital, made a like provision for Walter Langdon, another of the six children of Mrs. Langdon. It appeared that at the time of the execution of the codicil, above mentioned, the testator held and owned only $120,000 of the stock called the New-York City Water Loan, and that he did not own to exceed that amount thereof at the time of his death. It further appeared that no legacy, other than the one claimed to have been made to the children of Mrs. Langdon

by the codicil, was made by the testator of any stock which he did not own at the time the will or codicil by which it was given was executed. The will, however, contained a provision which was applied to the codicil, that in case any of the stock or funds, specifically bequeathed, should not be owned by the testator at his decease, that such bequests should be made up by the purchase by his executors of such stocks or those of a similar character. The other provisions of the will and codicil, and such other facts as were *101] *claimed to have a bearing on the question, are sufficiently stated in the opinion of the court.

The cause was heard at a special term in New-York, before Mr. Justice Edmonds, who ruled and decided that under the codicil, the plaintiff, Mrs. De Nottebeck was entitled to only one-sixth of the $100,000; and this amount having been paid to her by the executors prior to the action, he dismissed the complaint with costs. The counsel for the plaintiffs excepted. The judgment was affirmed by the supreme court at a general term in the 1st district. (*See* 16 *Barb.*, 412.) The plaintiffs appealed to this court.

*N. Hill, Jr.*, for the appellants.

*Daniel Lord*, for the respondents.

DENIO, J. The primary words of the bequest under consideration, would give to such of the six children of Mrs Langdon, who are named, as should survive the testator the $100,000 of water stock collectively; and the subsequent language in which their shares are spoken of and directed to be accumulated, would make them tenants in common of that stock. The doubt which exists in the case arises out of the language of the provision respecting the time of payment to the several children. The grammatical

De Nottebeck *against* Astor.

relation of the words "to be paid to each," is the $100,000 of city stock; and there is certainly force in the argument, that the verbal construction of the whole sentence would give that large amount to each of the children. But the grammatical construction is not necessarily the one which the sense requires. The design and office of the member of the sentence, in which the words which I have quoted occur, are to prescribe the time when the legacy is to be paid into the hands of the several legatees. They were infants at the time of the execution of the codicil; and if *they should also be under age at the death of the testator, the legacies would be payable to them imme- [*102 diately or within one year after that event, and the administration of the funds would fall into the hands of their respective guardians. The testator determined that the management should remain with his executors until the children respectively attained their majority; and the purpose of this part of the sentence was to declare his pleasure in that respect. I do not think it was intended by this language to qualify the former operative words of gift. The subject, which was to be paid to each on attaining the age of twenty-one years, was not, I think, intended to be defined by these words; but only that each should receive, absolutely, what he was entitled to at that period, and not before. I do not say positively that this would be so if the sentence ended with these words; but the clause proceeds to speak of what he had given to these legatees as *their shares*, thus: "The interest of the shares of those under that age to be accumulated for their benefit until that period; and in case any of them shall die before that age without issue, then his or their shares shall go to the survivors." A share of a sum of money, or other devisable thing, is one of the parts into which it may be divided. When, therefore, the testator had, in the commencement of the sentence, named $100,000 as a legacy to the six children,

and subsequently gave particular directions respecting their shares, I think he should be taken to mean shares in the $100,000 of stock, and consequently that that sum was to be divided into shares. I do not deny but that, in speaking in a general and indefinite way, distinct and separate legacies of separate sums, might be termed shares; but the first mentioned meaning would be the most natural, as it would be the more correct meaning. But little assistance can be derived from other portions of the testamentary papers. There are, it is true, several instances in the will and codicils, where a legacy or a sum of money is given to a class *103]  *of persons, and an equal division among them is directed by express words, as in the case of the bequest of $5000 to the children of Maria Moore in the will itself, which is " to be equally divided among them ;" and in that to the children of Hannah Moore, in the eighth section of the first codicil, where the same amount is given, with the same language respecting a division ; and again in the same section of the second codicil, in which the legacy in question is found, where $100,000 in certificates of the trust company is bequeathed in remainder to the same children of Mrs. Langdon, with the direction that it is " to be equally divided among them." This would lead to an inference of some weight in favor of the plaintiff, were it not that there are countervailing examples of an opposite tendency. Where the amount named is intended to be multiplied, so that each legatee shall have the whole nominal sum, a very different phraseology is used from the one employed in the bequest under consideration. For instance, in the third clause of the will, the testator says : " To each of my said grandsons," naming them, " and to each of my said granddaughters," who are also named, " on their respectively attaining the age of twenty-four years, I give twenty-five thousand dollars," &c. Then, in the eighth clause of the

De Nottebeck *against* Astor.

first codicil, the testator gives " to each of the children of George Ehringer, &c., one thousand dollars." These bequests show that where the testator designed to give in one clause to each of several persons a legacy of an equal amount of money, there was a form of expression which he had frequently used, which he omitted to adopt in the clause under consideration; from which an inference of more or less force arises, that he did not intend to give each of them the $100,000. But I do not see that we are materially aided by a reference to these portions of the will. The draftsman does not appear to have always used uniform phraseology to express the same ideas, and we are thrown *back to the language of the principal clause, which [*104 I have already considered.

The construction which I have given to these bequests is strongly corroborated by the consideration that the testator was not possessed of anything like the amount of the particular stock referred to, which would be necessary to satisfy the legacies upon the plaintiff's construction. He had but $120,000 of the water stock when he executed the codicil, by which it is said he bequeathed $600,000. It is true, the legacies are not specific, according to the received construction of the language in which they are given. (*Ward on Legacies*, 26.) And, moreover, the testator has taken care that they shall not be so considered, by making an express provision that they should not be liable to be ademed. Still, we cannot overlook the idea that the bequests of stock, both in the will and in the codicils, have a certain reference to the amount of such property possessed by him. By a provision in the eleventh clause of the will, he anticipates the case of the stocks which he had given being paid off or becoming insecure; in which case he authorizes other investments to be made. He considers the bequests of stocks in some sense specific, for he so characterizes them; and he provides that in case he shall not be possessed of

3 KERN.—7

them at the time of his decease, the executors are to supply
them by a purchase of stocks of the same or a similar kind.
This eleventh clause of the will is applied to this bequest by
the eighth clause of the fifth codicil.   Upon the plaintiff's
construction, the testator, as to nearly half a million of
dollars of these legacies, must have had in view a purchase
of stocks by himself or his executors.   In other words, as
to $480,000, the subject of the bequest was money, to be
laid out in stocks.   If this had actually been his intention,
it is scarcely probable that he would have indicated a parti-
cular stock to be purchased, when it is evident from the
provision last referred to, that he was alive to the fluctuating
character of such securities.   If the subject had been money
*105]   *to be laid out in stock, I think the direction would
have been to purchase such stock as the executors
deemed most advantageous; or, if he had intended to make
the purchase in his lifetime, it is not likely that he would
have fixed upon a particular stock in preference to any other.
Indeed, if the testator had intended to give $600,000 to these
legatees, and was aware, as he must be taken to have been,
that he had only $120,000 of the water stock, it is quite im-
probable that he would have assumed to give all the legacies
in such stock.   Including the legacies under consideration,
the testator, in his will and in the prior codicil, had given
legacies of nine different kinds of funded securities, em-
bracing state, city, bank and trust company stocks; and
the evidence shows that in every instance he was the owner,
at the time of executing the testamentary paper, of an
amount of such stock equal to the sums which he be-
queathed.   In no instance did he bequeath a stock which
he did not at the time possess, or a greater amount than he
possessed.   To my mind this is satisfactory evidence of
the existence of a relation in the mind of the testator
between the stocks which he owned and those which he
bequeathed, and of a general intention to give only what

he at the time had. At the same time he did not mean to embarrass himself in the future management of his estate; and hence the provision inserted for greater caution, declaring in substance that a sale or redemption of the stocks bequeathed, should not operate as an ademption of the legacies. Assuming the will, in respect to stocks, to have been formed on this theory, it is inconceivable that he should have given to these legatees nearly $500,000 of stock to which he had no title. Although the legacies in this case are not specific in the sense which requires that the thing should exist and be owned by the testator at the time of his death, in order to give effect to the bequest, it is still specific in a certain sense. They are legacies of quantity with a specific fund appropriated for the payment of them. Such provisions *are sometimes called demonstrative legacies, the [*106 mention of the fund being rather by way of demonstration than of condition. (*See the cases cited in Ward on Legacies*, 21, 22.) Considered in this light, the relation between the fund and the bequest, where the interpretation of the latter is in controversy, is the same as though the legacy was specific. The testator must be considered as having in his mind the particular fund which is thus contingently appropriated to satisfy the legacy. If we concede, then, that it is uncertain upon the language of the bequest, whether the testator intended to give $100,000 of this stock to all the legatees, or that amount to each of them, and we ascertain at the same time that the gifts, though not specific in the sense of conditions, had reference to certain stock which the testator owned, by way of demonstration, and as furnishing a fund from which, if it remained on hand, the legacy was to be satisfied, and we find that the amount of such stock possessed by him when he executed the will, would fully satisfy the legacies upon one construction, but would fall far short of doing so upon the other, there is a strong presumption that the former is the true interpretation. This

inference, taken in connection with the presumption afford-ed by the practice of the testator in respect to the other stock legacies, of giving only what stock he possessed, has had a decisive influence upon my mind in favor of the con-struction upon which the defendants insist.

The advancements to Woodbury and Walter Langdon, do not seem to me to bear strongly upon the question under consideration. The settlements referred to are not testa-mentary papers to be necessarily taken into consideration in construing the testator's will. They are rather to be regarded as subsequent acts *in pais*, or in the light of decla-rations made after the execution of the will. But if they were parcel of the writings to be construed, like the later codicils, I do not think any safe argument favorable to the plaintiff could be deduced from them. These grandchildren *107] *were about to be married, and the question was again presented to the testator under different circum-stances, as to the extent to which he would consider them in the bestowal of his bounty. It was clearly a part of his inten-tion to revoke the legacies in their favor contained in the will and codicil, but it cannot be affirmed that he meant to limit them by the new provision to the same amount. A sen-tence in the deeds seems to me to lead to a different conclu-sion. The provision made by the settlement was to be "in anticipation and satisfaction of [the legacies] *according to the amounts thereof and of this present disposition.*" The amount given by the deeds was $150,000 to each grandson, and this was just the amount of the legacies upon the plaintiff's construction; but upon the defendants, the provision by the settlement greatly exceeded the legacies. If the testa-tor had understood he was giving precisely the same amount by the settlement which he had given by the legacies, the added words would have been unnecessary and unmeaning but if he considered the new provision as a larger amount,

De Nottebeck *against* Astor.

he might properly say, as it appears to me he intended to do, that the new provision to the amount necessary to cancel the former one was an anticipation and satisfaction of such former provision.

My conclusion is that the supreme court gave the correct construction to the bequests, and that its judgment should be affirmed.

DEAN, J., delivered an opinion to the same effect as the foregoing.

Judgment affirmed.[1]

---

[1] It is well settled by the modern cases that all technical rules of construction must yield to the expressed intention of the testator, if such intent be lawful. *Delaney* v. *Van Aulen*, 84 N. Y. 16. *Reck's Appeal*, 78 Penn. St. 432.