JAMES E. DELANEY, Respondent, *v.* WILLIAM C. VAN AULEN, Appellant.

The will of K. gave her residuary estate, real and personal, to her execu-
tors in trust to receive the rents and profits of the real estate, to invest
and keep invested the personal estate, and to apply such rents and profits
and the interest or income of the personalty to the use of her husband for
life, except that they should apply to the use of the plaintiff who the
will states was brought up by the testatrix, " the sum of $500 per annum
thereout," until he reached the age of twenty-one, after that " the sum of
$1,000 thereout,", during the life of her husband, and after that " $2,000
thereout during his natural life." There was no gift of the remainder.
The testatrix had a brother living at the time of making the will,
who survived her; at the date of the will, and at the time of the death of
the testatrix the income from the residuary estate was ample to pay the
annuities so given to plaintiff and to leave a larger sum for the husband.
After the death of the latter the property did not yield enough to keep
the real estate in good repair, to pay taxes and incidental expenses, and
to pay plaintiff his annuity. In an action asking for a construction of
the will and that the deficiency be paid out of the *corpus* of the estate,
*held,* that the intention of the testatrix was that the gift to the plaintiff
should be paid only from the annual profits of the estate; and that no
part of the *corpus* of the estate could be applied to make up the de-
ficiency; also that the trust was to receive and apply the income during
the lives of the beneficiaries named and the life of the survivor.
As to whether plaintiff has the right to have deficiencies in payments
made up from increased avails in after years *quære*.
The old chancery rule construing testamentary gifts of fixed sums by way of
annuities payable out of rents and profits, as authorizing the taking of
a sufficient sum from the body of the estate to make up a deficiency,
stated to have been modified, so that in such cases the intention of the
testator is to be ascertained and effect given to it.
The authorities on the subject collated and discussed.
*Delaney* v. *Van Aulen (Mem.,* 21 Hun, 274), reversed.

(Argued January 20, 1881; decided February 1, 1881.)

APPEAL from judgment of the General Term of the Supreme
Court, in the second judicial department, entered upon an
order made May 11, 1880, affirming a judgment in favor of
plaintiff, entered on a decision of the court on trial at Special
Term. (Mem. of decision below, 21 Hun, 274.)

This action was brought by plaintiff as legatee under the will of Mary S. Kirby, deceased, for a construction of the will, he asking that the provision for him " be adjudged to be a demonstrative legacy, payable out of the principal of the estate in case of a deficiency of income, and that defendant as trustee under the will be required to pay out of the estate an alleged deficiency."

The substance of the will in question and the material facts appear in the opinion.

*Samuel Hund* for appellant. Plaintiff has no title whatever of any sort in the *corpus* of the estate. (1 R. S., 729, § 60 ; *Boynton* v. *Hoyt,* 1 Den. 53 ; *Grout* v. *Van Schoonhoven,* 1 Sandf. Ch. 336 ; Perry on Trusts, 524 ; *Forbes* v. *Richardson,* 11 Hare, 354 ; *Long* v. *Short,* 1 P. Wms. 403 ; *Creed* v. *Creed* [H. of Lds.], 1 Drury & Warren, 416 ; *Addecott* v. *Addecott,* 29 Beav. 460 ; *Hindle* v. *Taylor,* 20 id. 109 ; *Baker* v. *Baker,* 6 H. of Lds. Cas. 616 ; *Earle* v. *Billingham,* 24 Beav. 445.) The executors hold the property absolutely in trust for certain purposes, and they cannot alienate or apply any part of it to any other purpose. (*In the Matter of Fero,* 9 How. Pr. 85.) They cannot change its investment. (1 R. S. 730, § 65 ; *Conger* v. *Jones,* 18 Barb. 467 ; *L'Amoreux* v. *Van Rensselaer,* 1 Barb. Ch. 34.) A legacy to the widow, substantially in lieu of dower, and accepted by her as such, does not abate on a deficiency of assets. (*Heath* v. *Dindy,* 1 Russ. Ch. Cas. 543.)

*D. P. Barnard* for respondent. The testatrix intended that $2,000 per annum of her property should go to the support and use of plaintiff. (2 Jarman, 204, 309, 534, 537 ; *Moseley* v. *Marshall,* 22 N. Y. 200 ; *Stewart* v. *Chambers,* 2 Sandf. Ch. 382.) The annuity is in the nature of a demonstrative legacy, and on a failure of the fund is to be made good out of the general assets. (2 Story's Eq. Jur., § 1064a ; Willard's Eq. Jur. 502 ; *Walton* v. *Walton,* 7 Johns. Ch. 258, 262 ; *Enders* v. *Enders,* 2 Barb. S. C. 362, 365, 367 ; *Newton* v.

*Stanley*, 28 N. Y. 61; *Pierrepont* v. *Edwards*, 25 id. 128; Williams on Executors, 995, 996, 1000, 1004; 1 Roper, 192, 203, 218, §§ 4, 193, 199, 208, 219, 220, 233; *La Grice* v. *Finch*, 3 Meriv. 50; *Wilcox* v. *Rhodes*, 2 Russ. Ch. 452; *Chaworth* v. *Beech*, 4 Ves. Ch. 555; *Gillaume* v. *Alderney*, 15 Ves. 383; *Sadler* v. *Turner*, 8 id. 617; *Raymond* v. *Brodbelt*, 5 id. 199; *Kirkpatrick* v. *Kirkpatrick*, cited in *Roberts* v. *Peacock*, 4 id. 159; *Mann* v. *Copland*, Madd. 223; *Creed* v. *Creed*, Cl. & F. 491; 1 Shep. Touchstone, 433.)

FOLGER, Ch. J. The testatrix, by her will, provided, first, for the payment of her debts and funeral expenses, and the purchase of a burial plot and the erection of a monument. She then made a specific bequest to a cousin of a few chattels of domestic or social use. She then devised and bequeathed to her executors, whom she named in her will, and to the survivor of them, all the residue of her estate, real and personal (she had both), in trust, to receive the rents and profits of the real estate, and to invest and keep invested the personal estate, and to apply those rents and profits, and the interest or income of the personal estate, to the use of her husband for his life, except that they should apply to the use of the plaintiff in this suit, who, the will says, was brought up by her, the sum of $500 per annum thereout, till he reached twenty-one, after that $1,000 per annum thereout, during the life of the husband; and after his death $2,000 per annum thereout, during the natural life of the plaintiff. There is no devise or bequest of the remainder after the death of the plaintiff, though she had a brother living when she made the will, and who survived her, and is the defendant in this suit and the cousin above spoken of. At the date of the will, and at the time of the death of the testatrix, the rents and profits of the realty, and the income from the personalty, were ample to pay to the plaintiff the varying annuities contemplated by the will for him, and to leave a larger sum for the use of the husband. At those dates she occupied one piece of the real estate as a homestead; other real estate yielded $5,000 per annum. The

personal property was a mortgage of $18,000 at seven per cent interest.   Since her death, and since the death of her husband, in the mutations of affairs, the property has failed to yield enough to keep the real estate in good repair, to pay taxes and other incidental expenses, and to put the trustee in funds with which to pay the plaintiff his annuity.   The plaintiff asks judgment in this suit, for a construction of the will ; and that the provision for him be adjudged a demonstrative legacy, payable out of the *corpus* of the estate, whenever there is a deficiency of rents and income ; and that a deficiency that had in fact arisen when the suit was begun be paid therefrom.

There can be no question that the testatrix, when she made her will, looked upon the rents, profits and income of her estate as enough to pay this annuity, to leave a larger sum for the use of her husband during his life, and for a surplus for her next of kin after his death.   She designated the profits as the fund from which the sum should come with which to pay the annuity.   But the inquiry may not stop there.   It is to be pushed further, until it is learned whether she meant if that fund failed, that nevertheless the plaintiff should be paid his annuity every year in full, though the body of the estate should be impaired or consumed, and her husband in his life-time, and her next of kin after his death, get nothing.   This, at first blush, seems a purpose so extreme as not to be attributed to the testatrix, unless the words she has used, as construed by inexorable rules, and the circumstances of the case, clearly lead thereto.   The words of the will are to the effect that the rents, profits and income of the estate shall furnish the means to pay the plaintiff's annuity.   They are given to the executors in trust to receive and apply.   Generally speaking, the interpretation of the words " rents and profits " is, that they mean the annual rents and profits.   (*Heneage* v. *Lord Andover*, 3 Younge & Jervis, 360 ; *Allan* v. *Backhouse*, 2 Ves. & Beames, 65.)   If there were no contrary adjudication it could be fairly argued that a direction to raise money by annual rents and profits is to be put in contradistinction to a sale and mortgage. (2 Ves. & Beames, *supra*.)   Indeed the Vice-Chancellor of

England, in *Forbes* v. *Richardson* (11 Hare, 354) said: "I
do not find any case where a direction for payment out of an-
nual rents and profits has been held to give a right against the
*corpus*, or beyond the annual or current rents and profits."
This remark, however, in view of other decisions, must be con-
fined to a direction, where the word "annual" is expressly or
by most clear implication attached to the words "rents and
profits." It is not too much to say, however, that the meaning
most naturally to be got from a direction to take rents and
profits and thereout to pay a sum of money would confine the
means to pay to the moneys derived from the rents and profits
as they came to hand from year to year, and would not extend
to an appropriation of the body of the estate. Lord ELDON
said in *Bootle* v. *Blundell* (1 Mer. 192): "If I were asked
this question anywhere but in Westminster Hall, I should
answer in the affirmative, that by profits he probably meant an-
nual profits only." Judge COWEN, in *Bloomer* v. *Waldron* (3
Hill, 361) indicates the same opinion, and says that the natural
and obvious meaning of the words has been departed from in
chancery to such a degree as may entrap a plain man; and
that a forced and unnatural interpretation has been gone into
in pressing exigencies. Yet that interpretation has become,
with some limitations, a well-established rule of chancery.
"Whatever might have been the interpretation of these words
had the case been new, whatever doubt might arise upon them
as denoting annual or permanent profit," says Sir THOMAS
PLUMER, "it is now too late to speculate, this court having by
a technical, artificial but liberal construction, in a series of au-
thorities, admitting it to be the natural meaning, extended
those words, when applied to the object of raising a gross sum
at a fixed time, when it must be raised and paid without delay,
to a power to raise by sale or mortgage, unless restrained by
other words." (*Allan* v. *Backhouse, supra.*) He cites and
discusses many cases and adds: "The rule has now become
an established one of construction, not permitting the court to
exercise any discretion." That was in 1813. Two things are
to be noticed in the first of these remarks, as somewhat limit-

ing the extent of it.    First, that the object of the power is to
raise a gross sum at a fixed time, which must be raised and
paid without delay, and, second, that the direction is not re-
strained by other words.    Many of the cases are where legacies
are to be paid out of the profits ; a legacy is a gross sum, and
generally to be paid at a fixed time and without delay.    Some
of them are cases of annuities which, though payable from
time to time, are at each time of payment gross sums and payable
at fixed times.    An annuity falls within the rule, unless the other
words of the will restrain it.    We think though that later ad-
judications have somewhat relaxed the rule, looking at the
purpose that first set it up, viz. : by a liberal construction of
the words of the testator taking them to amount to a direction
to sell, so as to obtain the end that the testator intended by
raising the money.    (2 Story's Eq. Jur., § 1064 a ; *Green* v.
*Belchier*, 1 Atk. 505.)  So that it has come in the course of judg-
ment, that not only the other words of the will may restrain
the operation of the rule, but so may all other indications which
courts are wont to note, in order to gather the intention of the
maker of a disposing instrument in writing.    The courts have
been ready to take hold of the context of wills to hold the rule
in check.    ( *Wilson* v. *Halliley*, 1 Russ & Mylne, 590 ; *Small*
v. *Wing*, 5 Bro. P. C. [Tomlin's ed.] 66 ; 3 Younge & Jervis,
*supra*.)    And where the rule has been applied, the use of it
has at times been justified, only by such being the intention
of the testator as derived from all the words of the will.
(*Schermerhorne* v. *Schermerhorne*, 6 Johns. Ch. 70.) Indeed, it
may now be said that there is no principle whatever involved
in these cases, save to ascertain what is the testator's intention
and to carry that intention into effect (*Baker* v. *Baker*, 6
H. of L. 616) ; wherein that construction is to be given, that
under the circumstances appears to be the correct one, each
case getting little aid from the authorities, and depending in a
great degree upon its own circumstances and language.    (Id. ;
*per* Lord CHELMSFORD, Lord Chancellor ; *per* Lord CAIRNS,
L. J. ; *Birch* v. *Sherratt*, L. R., 2 Ch. App. 642, [* 644].)  As
expressed by Lord CRANWORTH, in *Baker* v. *Baker* (*supra*), the

real question is, is that which is given, given as an annuity, or as the interest of a fund ; does the language of the testator import that a sum at all events is annually to be paid out of his general estate, or only that it is the interest, or a portion of the interest, of a capital sum that is to be set apart. So DENIO, J., says : "No positive rule of ready application to every case can be laid down, but each will depend upon a consideration of all the material provisions of the will to be construed, and of the extrinsic circumstances respecting the testator's family and estate, which may be fairly brought to bear on the question of intent" ; (see *Pierrepont* v. *Edwards*, 25 N. Y. 128), the authority of which case, it is plain, fettered the judgment of the learned General Term. He further says, that " the leading principle of the cases is that when the testator bequeathes a sum of money, or which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular way or out of a particular fund," and cites *Dickin* v. *Edwards* (4 Hare, 273). We cannot fail to perceive that the rigid rule stated in *Allan* v. *Backhouse* (*supra*) has been relaxed, and that the courts may now exercise their judgment. And the question arises in every such case, which was the primary and most material portion of the testator's intent, and which was, in his mind, the incident to such primary intention (Id.), and this may be gathered from the context of the will, and from such extrinsic circumstances as are properly taken into view in such a case.

Let us then look first at the will in all its parts. The devise and bequest is of the residue of the estate of the testatrix, real and personal, and though the trust is to receive the rents, profits and income, this does not prevent the vesting in the executors of the legal title during the life of the *cestuis que trust.* (1 R. S. 728, § 55, sub. 3 ; id. 729, § 60; *Craig* v. *Craig*, 3 Barb. Ch. 76–94.) The direction to keep the personal estate invested on bond and mortgage and in public

stocks is not an indication of much weight that the body of
the fund shall not be liable for the full and prompt payment
of the annuity. Many of the cases to the contrary show
equivalent directions. But the direction how to apply the
moneys received by the executors has much significance. It
reads thus: " To apply said rents and profits of real estate,
and interest or income of personal estate, to the use of my hus-
hand William L. Kirby during his natural life." Here is not
a direction to pay a fixed sum at a specified time, and without
delay, but to devote that which is received, be it more or less,
to the use of the beneficiary. Clearly this is not given as an
annuity. It is given as the current avails of a fund. It does
not import that a sum, at all events, is annually to be paid out
of the estate, but only that the profits of a capital sum, that is
to be set apart, are to be so paid. It is manifestly impossible
ever to say, so long as the trust property yields any profits or
income, that the husband is to have any thing, more or less,
than the sum annually yielded, or to have it from any other
source than from the annual yield. In his case there never could
be a claim that the body of the trust fund should be cloven in two
to yield him a sum ; for the query would be at once what sum ?
No sum is named that he is to have. There is no determinate
time for raising it. (1 Atk., *supra*, p. 507.) He is to have rents
and profits and income, be they more or less. He is to have
them when they come in, be it sooner or later. As to her hus-
band then, there is nothing to show an intention in the testatrix
that the *corpus* of the estate should be taken for his use ; rather
the contrary is shown, that he is to have only annual rents, profits
and income, though, they vary in amount, from year to year.
At once, the query arises, did the testatrix intend, could she
have intended, better things for the youth she had brought up,
than for the man she had married and lived with until death ?
Now the provision for the plaintiff is not, in the full sense of
the word, one independent of that for the husband. It is
grafted upon it. It is by way of exception from it. The exec-
utors are to apply all the rents, profits and income to the use
of the husband, except that they shall apply to the use of

James E. Delaney, thereout, the sums named in the will; one of them yearly, until he arrived at age; after that, another yearly, during the life-time of the husband, and after the decease of the husband, another yearly during his own life-time. The money for Delaney is excepted out of other moneys. Those other moneys are to be raised in a certain way. Can the thing to be excepted out of another be raised in a different way from that other? If it can, and shall be, then it will not be money from those moneys, but other money, and not a part taken from those moneys. The effect of this exception, during the life-time of the husband, is that the sum named for the use of Delaney was first to be deducted from the yearly avails of the estate, and the residue to be applied to the use of the husband. If Delaney had died during the husband's life, the latter would have taken the whole yearly avails. (16 N. Y. 368.) This was tantamount to a gift to the husband of a life-interest in the residue and overplus of the rents and profits, after the satisfaction of a certain yearly charge thereon. That form of gift has been held to be a manifest declaration, that the charge is to be satisfied out of the same rents and profits of which the residue is so given. (*Heneage* v. *Lord Andover supra.*) It is true that she contemplated, as the will shows, that Delaney would survive her husband; but it shows also, that she contemplated that each would live after her, to take the provision made for him. We have seen that the provision for the husband does not bring the case within the rule invoked for this plaintiff. It is not to be said that an exception from that provision is greater and more forceful in this respect than the provision itself. For consider that the rule grew up, by the courts striving to carry out the intent of the testator, that a gift made by him should be enjoyed, though the particular means he looked to and named for the purpose failed therefor. Now the intent of the testatrix here was as much, if not more, that her gift to her husband should be enjoyed, as that to Delaney should, and we cannot therefore say that she had an intention that Delaney's gift should be satisfied, to the impairment or consumption of the estate, for that would be the destruction

of the gift to the husband and a thwarting of her intentions for him. Both intentions can be better carried out, by saying that the annual avails shall alone be used as far as they will go and the *corpus* be preserved intact to make an annual yield. For to attribute the other intention to the testatrix would be also to attribute to her an intention that in a possible event, not resulting from his conduct, her husband should be deprived of any share in her bounty, which would be discordant with all that the will and the circumstances show.

The will makes no disposition of the fund after the death of Delaney. A like fact, in other cases, has been given different effects. Here, it may have been without forecast, or in unconcern for the ultimate result. It is not certain how it was. She left a brother who was her only heir at law and next of kin. It is not impossible that she may have been advised that the law would give to him, or to his descendants, in the absence of a testamentary disposition, all of her estate that should remain after the death of Delaney. We do not think that the lack of an especial gift of the remainder furnishes, in this case, much indication of intention to charge the *corpus*. (See *Philips* v. *Gutterridge, supra.*) We think that in other respects the form of the gift to Delaney indicates an intention that it shall be got from the annual avails. It is not in direct terms a gift to him of a sum out of the profits. It is an exception from a prior gift. The prior gift was, in the mind of the testatrix, the first thing. The way in which that was to be raised is the way not only for it, but for that which is excepted from it. If that is to be got from the yearly profits, then that which is to be deducted from it is also to be got therefrom. If the testatrix had had a different intention as to these two gifts, in this respect, she would have made distinct expression of it. But the same expression runs through the two gifts. The rents, profits and income are to be applied to the use of her husband, except that thereout shall be a sum applied to the use of Delaney. We think too that it must be conceded that the trust to receive the rents and profits, and to apply to the use

of the husband during life, and to a certain amount to the use of Delaney during life, is equivalent to a trust to receive during the lives of those beneficiaries, and the life of the survivor, and to apply. Then comes in the distinction noted in *Phillips* v. *Gutteridge* (3 De G. J. & S. *332), for the right to receive the profits is not general and indefinite; it has a limitation of time.

It is in the words of the will, too, that one of these beneficiaries was the husband of the testatrix, and that the other is the object of her favor from having been brought up by her. Naturally, we would think she would have perferred her husband, as an object of favor, to Delaney, and the will itself indicates that she did, in its larger provision for the former. We are aware that Lord ELDON said in *Bootle* v. *Blundell supra*, that circumstances *dehors* the will, such as the greater degree of personal favor which the testator must be presumed to have felt toward this or that object of bounty, ought to be set aside on a question like this, which is fit to be decided only by an examination of the whole will taken together. Here, however, the will itself gives to some extent the basis for the presumption, in its description of the beneficiaries, and in the greater sum intended for one. Besides, it seems now to be a recognized aid to construction, that one or the other beneficiary named appears to be the primary object of the testator's bounty. (*Per* SELDEN, J., *Giddings* v. *Seward*, 16 N. Y. 365–367.)

We may now see whether there is any extrinsic circumstance that will show an intention in the testatrix. (*De Nottebeck* v. *Astor*, 13 N. Y. 98.) The extrinsic circumstance most significant is, that during the life of the testatrix, at the time she made her will and from thence until her death, the avails of her estate were ample to carry out her directions, without trenching upon the body of it. She well knew that this was so. It does not appear that she had any reason to apprehend that it would not measurably continue to be so. She was not engaged in business, we may assume; so that there could be no great indebtedness to meet. She made no provisions prior to

the gift of the residuum that would take largely from the estate, so that there would be no material diminution of it before it reached the trust fund. The estate was not exposed to the hazards of business, and might well be looked to as stable. It was left by her to the executors, just as she had kept it in her life and found it sufficient for her needs. She shaped her purposes by measurement of them with it, and gave it with no direction for a change of its condition, but rather with the implied direction to keep it in like state. To be sure, it must be so in, most cases, that the testator anticipated that the profits would be enough to carry out his purpose, and his anticipation must have failed, or the question would not have come into the courts, whether the *corpus* could be invaded. Yet that the anticipation well founded, is sometimes, of some effect in arriving at the intention, is seen from *Baker* v. *Baker* (6 H. of L. Cases, *supra*), where the Lord Chancellor argued against a construction that would take from the fund itself to make up a deficency of annual avails, that such a course might, in time, utterly annihilate the *corpus*, and the beneficiary be left without any provision at all; and that, therefore, nobody could suppose that such an intention could ever have existed in the mind of the testator — an idea which is peculiarly applicable here, as it would not take long, if the whole or a large part of the annuity is to be paid yearly from the fund, to exhaust it entirely.

For these reasons, we think that the intention of the testatrix was that the gift to the plaintiff should arise from the annual profits of the estate only.

We have not considered the question, whether the plaintiff has the right to have deficiencies in yearly payments made up from increased avails in after years, for the reason that neither the pleadings nor the facts present the question.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.