In the Matter of the Petition of RAY L. ERB and Others, as Executors, etc., of ELMER E. SMATHERS, Deceased, and of RAY L. ERB and Others, as Trustees under the Residuary Trust Therein Created, for Direction, Instructions and Relief.

Surrogate's Court, Westchester County, April 8, 1929.

*Tracy S. Voorhees* [*Robert P. Smith* of counsel], for the petitioner.

*Morris, Plante & Saxe* [*Stuart H. Benton* of counsel], for Anna S. Smathers.

*Max D. Steuer* [*Aron Steuer* of counsel], for Virginia Smith Healy and others.

SLATER, S. Instruction to executors and trustees in the instant case involves a construction of a portion of the decedent's will. The 20th paragraph of the will creates a trust of the residuary estate. It is given to trustees to hold, invest and reinvest, and to collect and receive the interest and income, and to pay the *net*

*income* thereof in a specified manner. The trust is founded upon two lives. The following provision in the 21st paragraph is important: "All provisions of this trust are to be read in the light of this period for termination, and all gifts of income to be paid from the trust to individuals for their lives or during intervals, or up or until the happening of conditions specified, are made hereby expressly subject to the continuance of this trust until such event, and in all cases shall cease and determine at the time of the termination of this trust."

The 22d paragraph says: " From the net income of said trust I direct my Trustees first to pay in each year the sum of One Hundred Thousand Dollars ($100,000.) to Anna S. Smathers * * *" (she being testator's widow). She is given the right and power to appoint and name, by will only, such person as she may desire to receive after her death the sum of $20,000 a year for life and the trustees are directed to make such payment during the life of the person so appointed. Subsequent paragraphs make provision for the payment from the net income of the said trust to Virginia Smith Healy, a person who stood in the mutually acknowledged relationship of daughter but was never legally adopted, $60,000 per annum for her life; to the Guaranty Trust Company as trustee for Virginia's children $20,000 a year for each; to another person the sum of $12,000 a year for life; $3,600 to each of five sisters of the decedent for their respective lives; and $1,200 to another person for life. The remaining net income of the trust is then distributed to more remote members of the family in units of income. As the persons who are interested in the units of income die, the will provides how and to whom such income shall pass.

The 32d paragraph of the will provides that all payments out of net income are to be payable monthly. Other payments of income to the beneficiaries of the units of income shall be made either annually, or at more frequent intervals as determined by the trustees. Wherever any gift of income shall fail or cease for any cause, prior to the expiration of the trust, and no other specific provision is made as to the use of such income, such income is to be added to the general balance of income and distributed among the units of income as specifically provided.

The 33d paragraph says: " It is my desire that the payments of income above provided to Anna S. Smathers, Virginia Smith Healy and to each of my sisters shall not only commence legally but shall commence to be paid actually immediately after my death without any delay whatsoever and the trustees are authorized and directed to use any funds or assets available as necessary for such temporary purpose, whether said funds or assets may constitute principal or

income. All of the payments of income hereinabove provided are to commence as of the date of my death and the actual payments are to commence as soon as practicable."

Under the 37th paragraph, upon the termination of the trust, all of the assets of said trust, except the outstanding stock of the corporation, are given to Elmer E. Smathers, Inc., a corporation.

The 38th paragraph provides that upon the termination of the trust the outstanding stock of Elmer E. Smathers, Inc., is to be distributed among the persons who at the time of the termination of the trust are receiving an income under any of the provisions of such trust, and all such persons so entitled are to receive that proportion of the total number of shares of stock of Elmer E. Smathers, Inc., which the amount of income which they are respectively entitled to receive per annum bears to the entire annual income of the trust.

By the 51st paragraph the trustees are to continue Elmer E. Smathers, Inc., as a corporation during the life of the trust and are directed not to dispose of any of the stock of such corporation.

The 52d paragraph of the will provides that if for any reason said corporation shall not be in existence at the time of the termination of the trust, or the devise or bequest to such corporation of the trust assets should be void or fail for any reason, the trustees shall distribute the trust assets among the same persons in the same proportions as heretofore specified for the distribution of the stock of such corporation.

The provision made for the widow is in lieu of dower.

A valid express trust is created (Real Prop. Law, § 96, subd. 3) to run for two certain named lives, and upon their death the estate in remainder passes to the persons who are enjoying the income of the trust at its termination.

The matter upon which the executors and trustees seek direction may be stated in two questions: Are the fixed sums payable annually "annuities" so that the transfer tax must be amortized and the tax charged against such fixed sums? Shall the transfer tax be paid out of the corpus of the trust?

It is well settled that, where a life estate or a trust is created with the gift over, the transfer tax is payable out of the principal of the fund with no recoupment from the income. (*Matter of Bushnell*, [1902] 73 App. Div. 325; affd., 172 N. Y. 649; *Matter of Vanderbilt*, [1902] Id. 69; *Matter of Tracy*, [1904] 179 id. 501; *Matter of Purdy*, [1927] 129 Misc. 297.) Counsel agree that in case of an annuity the annuitant must reimburse the fund in annual installments for the amount of the tax paid.

The legal definition of an "annuity" has been the cause of

puzzlement of mind and there is a wealth of embarrassment in the decisions of the courts. The yearly payment of a certain sum is confused with the law touching annuities, and also trusts to pay fixed sums out of net income annually. An annuity at common law was a yearly sum charged. Where a trust is charged with the payment of annual sums, the recipient is now often termed an "annuitant." Such an annuity is not assignable, while a true annuity may be alienated. The term "annuitant" has acquired a more extended meaning than at common law and frequently denotes a trust beneficiary entitled to annual payments.

Surrogate BRADFORD of New York county in 1857 said there is a distinction between *income and an annuity*. "The former embraces only the net profits after deducting all necessary expenses, and charges — the latter is a fixed amount directed to be paid *absolutely and without contingency.*" (*Ex parte McComb*, 4 Bradf. 151.)

Surrogate FOWLER in *Matter of Kohler* (96 Misc. 433, 441) says the distinction between annuities and trusts for the payment of income to beneficiaries is a *substantial* one. Where an annuity is created, the annuitant is entitled to the stipulated payments per annum, *irrespective of the earnings*. Where a trust fund is created, however, the beneficiaries are entitled to the entire income earned on the portion mentioned in the will. In the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of a specific direction. In the instance of a real or express trust, the trustees are not permitted to pay out any portion of the principal unless the will specifically so authorizes.

Mr. Justice CULLEN (later chief judge of the Court of Appeals) in *Spencer* v. *Spencer* (38 App. Div. 403, 409) distinguishes between annuities and trusts, saying: "But it must be remembered that in that case [referring to *Delaney* v. *Van Aulen*, 84 N. Y. 16], the gift was of an annuity and the executors were directed to pay the legatee a specific sum per year. In this case, though we in our previous discussion have used the term annuity as a matter of convenience, there is in fact no annuity, but a gift of rents and profits up to a specified sum. This seems so plain to us as to forbid elaboration. * * * "

Mr. Justice PAGE in *Matter of Kohler* (193 App. Div. 8), upon appeal from Surrogate FOWLER, wrote upon this question. The case was reversed (231 N. Y. 353) without reference to this particular question. Counsel speaks of such portion of his opinion as dictum. It may be so, but it gives the view of the learned justice. He says (at p. 12): "There is a radical difference between a provision that a certain sum is to be paid annually or a specified

time out of the estate, and a provision that it is to be paid out of the income and profits of a capital sum that is to be set apart. * * * As payment is to be made out of income no portion of the principal of the fund nor of the corpus of the estate could be applied to make up the deficiency. * * * If through the shrinkage of income, loss of the capital sum, or for other reasons, the income from the fund is diminished, or fails, the life beneficiary must suffer the loss." At page 20 he says: " It is a sufficient reply to state that the common-law terms 'annuity' and 'rent charge,' have long since lost their primary meanings and nice distinction." He accepts the view of Surrogate BRADFORD in *Booth* v. *Ammerman* (4 Bradf. 129, 133) and quotes him: "An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount varying according to the income or profits, though a certain fund may be provided, out of which it is to be payable. * * * The income or interest of a certain fund is not an annuity, but simply profits of certain property, to be earned, which may vary more or less."

In *Hooker* v. *Hooker* (41 App. Div. 235) it appeared that the residuary estate was given in trust for investment and disposition of the income by paying over to the wife $100 a month so long as she shall remain unmarried, with payment of the residuary estate to daughters and others. It was held that a valid trust was created. Mr. Justice CULLEN (at p. 240) said that the will in *Buchanan* v. *Little* (154 N. Y. 147) could be construed as it was because on the death of the two measuring lives the trust ceased, whether the annuitants or either of them were then living or not, indicating, of course, that the testator intended to create a charge against the estate for the two persons who were held to receive annuities. (*Market & Fulton Nat. Bank* v. *Nassau Trust Co.*, 27 Misc. 690. See *Wells* v. *Squires*, 117 App. Div. 502; *Matter of Trumble*, 199 N. Y. 454; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 151 App. Div. 166; *Matter of U. S. Trust Company*, 86 Misc. 603.)

The court's attention is directed to *Buchanan* v. *Little* (*supra*) and *People's Trust Co.* v. *Flynn* (188 N. Y. 385) as authority for calling the gifts of the specified amounts of net income in the instant case " annuities." The reason for these decisions is evident. They were made in order to sustain the will. The intention of the testator decided them. The wills had been attacked upon the ground that they violated the statute against perpetuities. By declaring certain gifts annuities and a charge upon the estate only, the intention of the testator was carried out. If the gifts were not annuities, the trusts would have failed.

*Davis* v. *MacMahon* (161 App. Div. 458; affd., without opinion, 214 N. Y. 614) was distinguished from· *Buchanan* v. *Little* (*supra*) and *People's Trust Co.* v. *Flynn* (*supra*) on the ground that the annuity was not given absolutely, but was expressly limited to income.

An annuity has certain characteristics; it is paid out of the *estate;* it is a *charge* upon the fund and may continue as a charge beyond the termination of the trust; it is a set sum in any event and may be paid out of corpus.

If a testator sets up a fund and directs out of the income the payment of a certain amount during the lifetime of a person regardless of the life of the trust, it is an annuity because a *charge* is created. If a testator provides for payments out of the income of the trust fund only during the lives upon which the trust is measured, then the payments are not annuities, but payments of income of a trust fund.

In the instant case the testator, upon the termination of the trust, has not provided for a continuation of the payment of the income. No continuing charge is created. The amounts are not paid out of the estate. The will not only prescribes the period during which the trust shall continue, measuring it by two lives in being, but it adds negative words forbidding its continuance longer, and provides that the estate shall pass in remainder to the persons who are enjoying the income upon the termination of the trust.

The terms of the instant trust provide for the payment of certain fixed amounts out of the net income. The trust estate is not charged with these payments. Neither are they independent of the trust. Should the income from the trust fund become depreciated and be less than the amounts directed to be paid, the last taker of income would suffer. The first payment from the net income goes to the widow. In no case could the corpus of the trust be taken to supply the income. Under the trust terms the income or profits might necessarily vary in amount according to the income or profits of the fund. The income or profits must be earned to be paid. The gift of specified amounts in the instant case cannot be held to be a legacy charged upon the estate. It is distinct and apart from a legacy by way of an annuity.

The testator by his own will making has not brought these gifts within the definition of annuities.

The Transfer Tax Law, a modern law, has caused the courts to consider the definition of " annuities " from a new angle.

Whether a gift was an annuity was considered in *Matter of Murphy* (124 Misc. 672, Surrogate FOLEY), a transfer tax case.

Here trustees were permitted to pay out of the net income of the residuary trust certain sums of money per month to persons for their respective lives and the surplus income was given over to charities. The learned surrogate held that the gift of income was not an annuity, but was a stated payment out of the *net income* earned on the trust, citing *Matter of Kohler* (193 App. Div. 8, 12) and that the method of amortizing the transfer tax against an annuitant was not applicable.

*Matter of Fleischer* (125 Misc. 321) indicates the difference between an annuity and a payment out of net income of a trust. The *estate* was charged with the quarterly payments and the trustees were directed to set apart enough estate to provide such income. An express trust was not created. The annual amortization of the tax was directed because it was an annuity.

The *Murphy* case was followed in *Matter of Andrews* (125 Misc. 782) which was not altogether similar.

The court has arrived at the conclusion that the fixed sums in the testator's will are not annuities.

A like determination is reached by another test, the *intention* of the testator. The court will apply this touchstone. Observe how important was intention in the cases submitted in favor of annuity.

*Buchanan* v. *Little* (*supra*) was an action for partition, and the validity of the trust was questioned. The will was construed to ascertain whether the intention of the testator found in his written words was within the law. The court said: "It is clearly the *intention* of the testator, on the face of the will, that the annuities * * * should be a charge upon his residuary estate."

*People's Trust Co.* v. *Flynn* (*supra*) was an action for construction to ascertain the testator's intention. The court declare the case was parallel to *Buchanan* v. *Little* (*supra*), saying: "Analogy is seldom so exact as that which exists between these two wills and we are unable to distinguish the case before us from the case cited " (meaning *Buchanan* v. *Little*).

The parallelism must so continue to the end; the charge on the residuary estate in each case is created. The testator's intention is declared. The rule of construction which will preserve a will is employed.

These two cases show the desire of the court to ascertain the *intention* of the testator and to declare it from the facts of each case.

*Delaney* v. *Van Aulen* (84 N. Y. 16) deals with the questions of annuity and intention. The court quoted Lord CRANWORTH in *Baker* v. *Baker* (6 H. L. Cas. 616), saying: " The real question is, is that which is given, given as an annuity, or as the interest of a

fund; does the language of the testator import that a sum *at all events* is annually to be paid out of his general estate, or only that it is the interest, or a portion of the interest, of a capital sum? " Again, quoting the words of DENIO, J., the court says: " No positive rule of ready application to every case can be laid down, but each will depend upon a consideration of all the material provisions of the will to be construed." Chief Judge FOLGER, writing in *Delaney* v. *Van Aulen* (at p. 21) sums it up in the words that should be applied here: " Indeed, it may now be said that there is no principle whatever involved in these cases save to ascertain what is the testator's intention and to carry that intention into effect."

The court need not be diligent to ascertain the testator's intention from his own words. The intention is obvious. Payment of income to wife, child and sisters actually commences at testator's death. The enjoyment of the gifts of income end with the expiration of the trust. When the trusts end, an estate in possession is gained. The testator trades dower for a stipulated sum per annum, no more, no less. The provisions carry testator's bounty by fixed sums to the wife, the child, her children, to sisters and near friends. The testator never intended to withdraw the dower from the widow and provide a fixed annual sum named by him to be lessened by the payment therefrom of any transfer tax. The wife, daughter and sisters were the chief objects of solicitude. The care of them was the primary purpose of the trust.

We are led to the inevitable conclusion that the distinction between an annuity and the payment of income from a trust fund may be determined herein from the testator's intention. The intention of the testator, when ascertained, is paramount in construing wills. There is no established rule of construction that does not bow to the intention of the testator.

Again, provision made in lieu of dower is to be construed most favorably to the widow. Such a provision is not a mere gratuity, nor only dependent upon moral claims for its support. It is given for a valid consideration, a release of dower. The court, to carry out the intention of the testator and the rule of law, should construe this provision of the will beneficially to the widow as far as possible. (*Spencer* v. *Spencer, supra.*)

In *Matter of Gallien* (247 N. Y. 195) the will was construed — the testator's intention stated. Chief Judge CARDOZO said: " What is needed is nothing more unusual than a common sense appraisal of probabilities and meanings."

It is the opinion of the court that it was the meaning of the testator not to create annuities, but to give only the income or a

portion of the net income of the trust fund. The language of the will supplies the " internal evidence " of intention.

I shall hold that the testator does not create annuities under the terms of the trust provision, but by paragraphs 22 to 27, inclusive, gives fixed portions of the net income of the trust fund. It follows that the transfer tax should be paid out of the corpus of the trust estate and the executors and trustees are so instructed and directed.

Submit decision and decree upon notice to the attorneys appearing.