In the Matter of the Estate of Herbert G. Squiers, Deceased.

Surrogate's Court, Westchester County, October 6, 1936.

*Barry, Wainwright, Thacher & Symmers* [*John C. Crawley* of counsel], for J. Mayhew Wainwright and City Bank Farmers Trust Company (formerly known as Farmers Loan and Trust Company), as trustees.

*Sheppard, Jones & Seipp [Henry G. Seipp* of counsel], for Virginia S. Squiers, as executrix of Bard MacDonald Squiers, deceased.

*Richard Steel*, for John Astor Squiers and Herbert G. Squiers.

*Emmet, Marvin & Martin*, for Ethel M. Squiers.

*Robert Y. Clark*, special guardian, for Marie J. C. Whitman, Harold C. Whitman, 3d, Bard Squiers Rousseau, Margaret A. O. L. Drayton, Myles Christian Campbell Squiers, Arthur Butler Squiers, Frances Sarah Squiers and Margaret McDonald Squiers, minors.

*Franklin Brooks*, special guardian, for Herbert G. Squiers, Jr., and Herbert G. Squiers, 3d.

SLATER, S. This is a proceeding by trustees to procure judicial settlement of accounts and to obtain construction of certain clauses of decedent's will. The decedent died October 20, 1911, leaving a will executed in 1909. The testator was survived by his widow, and three sons and three daughters, all, with one exception, under twenty-one. All of the children are now alive, except one. The testator's primary intention was to make provision for his widow.

Paragraph second of the will gave to the widow the life use of all the personalty, provided, upon the sale of any such personalty, the proceeds should be held as a trust fund, the income therefrom paid to the widow during her life, and, upon her death, made part of the residuary estate established by paragraph fifth of the will.

Among the chattels left by the decedent was his yacht which was sold, and the proceeds held in trust. The death of the widow terminated the trust and the question now relates to what distribution is to be made of the proceeds of the sale of the yacht. Upon the death of the widow such fund was to pass into the residuary estate which was to be held upon the lives of testator's two youngest children. Such provision is void as being a violation of the Statute of Perpetuities. This fund will be distributed as intestate property, passing into six shares, one-sixth to each of the children or the estate of a deceased child. The estate of the widow does not participate. (*Matter of Hungerford*, 135 Misc. 385.)

The specific property bequeathed in paragraph second of the will should be delivered to the legatees, free from all liens and claims.

Paragraph fifth of the will gives the rest, residue and remainder of the estate to trustees, in trust upon the measuring lives of the youngest two of testator's children surviving him. These two children are Bard MacDonald Squiers, now deceased, and John Astor Squiers, living. The income is to be divided equally among testator's six children *nominatim*, " or among such of my said

children as may be living during the lives of my said youngest two children or during the life of either of them." Upon the death of the survivor of the measuring lives, the remaindermen to receive the corpus are contingent and uncertain, because it is to pass to and be divided equally among "my then *surviving* children, or, if there are no children of mine *then surviving*, equally among the children of my sons or daughters bearing the given or baptismal name 'Herbert G. Squiers' or, in default thereof, among the then *surviving issue of my sons per stirpes* or, in default thereof, among the then *surviving issue of my daughters per stirpes.*"

The residuary trust is subject to the charge of the widow's annuity created in the third paragraph of the will and likewise subject to the charge relating to the purchase of a home for the widow and family created in the fourth paragraph of the will.

The testator's intent is clearly set forth in his own words as to payment of the corpus and the income thereof from the residuary estate. The balance of income is to be paid to such of testator's children as may be living during the life of either of the sons, Bard MacDonald Squiers or John Astor Squiers, the two measuring lives.

In the third paragraph of the will the testator creates an annuity of $7,200 to be paid to his wife in equal monthly payments during her life or until her remarriage. The widow never remarried. She died June 17, 1935. This annuity is made a charge upon the residuary estate by the fifth paragraph of the will and in the paragraph creating the annuity the testator directs that "resort may be had to the principal of my estate for the payment thereof in case the income should at any time be insufficient for the purpose."

The third or annuity paragraph authorizes the trustees to set aside securities, or cash, sufficient to provide the annual payment of $7,200 and to invest and reinvest the same and pay over the income, and, in the event of there being any income in excess of said amount, the same shall be paid over to the income of the trust created by the residuary clause. The testator provides that, if such fund be set aside, upon the death, or remarriage, of the wife, it shall be part of the residuary estate.

It appears from the decree of this court dated June 25, 1915, entered upon the settlement of the account of the executors, that the court approved an allotment of securities made by the executors for the annuity fund and directed that the same be held in accordance with paragraph third of the will. Such fund has been retained and administered by the trustees. It is the contention of some of the parties hereto that another trust was thereby created and that the life of the widow is another measuring life which, added to the lives of the two youngest children, violates the Statute against

Perpetuities. With this contention the court does not agree. The widow was not a beneficiary of another trust in the ordinary sense. The gift of the annuity to her did not constitute a trust estate, but was a general legacy charge upon the residuary estate. All that the surrogate did in 1915 by decree was what the trustees could have done without direction from the testator, or the court, *i. e.*, the setting aside of a fund to produce the annuity. If the income from such fund was insufficient, recourse was to be had to the residuary estate. The purpose of the allotment was to create *a fund* considered reasonable and proper to produce the annuity. (*Griffen* v. *Keese*, 187 N. Y. 454, 463.) The duration of the trust of the residuary estate depended upon the lives of the two younger children. There is no other suggestion in the will. The residuary trust is not dependent upon any other measuring life. The most that the trustees or the court did was to segregate a fund for the annuity charge. Neither could create a trust for the dead man. The testator created a valid express trust of his residuary estate. He intended, and clearly stated, that the annuity to the wife and the provision as to the purchase of a home were to be charges on such residuary estate. These views are supported by *Buchanan* v. *Little* (154 N. Y. 147, 151); *People's Trust Co.* v. *Flynn* (188 id. 385); *Matter of Smathers*, 133 Misc. 812, 816); *Matter of Fieux*, (144 id. 495); *Matter of Bowman* (159 id. 588). The annuity fund is and always has been a part of the residuary estate held in trust. No separate or new trust was created, or intended to be created. The testator recognized in the fourth paragraph of the will the necessity of providing only two measuring lives to support a trust when he says " that if thereby a trust should be created in respect of such proceeds for more than two lives in being at the time of my death I direct that such proceeds be forthwith distributed." It is hardly fair to the testator, whose draftsman so clearly understood the law, to say that he intended to and did create another trust with another measuring life which would destroy what he had so carefully provided — the payment of income to his children.

In the fourth paragraph of the will the trustees are authorized, empowered and directed " at the *request* of my wife, to expend not exceeding forty thousand (40,000) dollars, in the purchase of a home to be selected by my wife." Provision is made, in the event of such purchase, that the home shall be held in trust; how it shall be used and by whom; how it may be rented or sold, making provision for the distribution of the proceeds of sale, and, if not sold, making provision upon the death of the wife for the distribution of the value of the property. These provisions are all predicated

upon the fact that a home is purchased. However, no home was ever purchased in pursuance of the provision of this paragraph.

The surrogate's decree above referred to, entered June 25, 1915, provided that the executors transfer to themselves $40,000 in securities, provided that the same shall be held in trust and that the income therefrom shall be paid to the widow for the purpose of enabling her to pay the rent of a place of residence for herself and the unmarried children, and such trust fund to be expended as provided in article fourth of the will for the purchase of a home, *if requested by the widow*, in the manner provided in article fourth of said will. The widow never requested the purchase of a home.

This human set-up is certainly commendable, but not legal. The court at that time did not construe the will. Now, upon the death of the widow, contention is made that here is created another trust in the amount of $40,000, with an added life, and, consequently, that this fund is touched with such invalidity that, as to such part, the testator died intestate. Neither do I agree with this contention. The home was never bought. The $40,000 continued to remain in the residuary estate, even if a fund was created for future use. Neither the trustees, nor the court, could make a new will for the testator. He created no such trust. He provided for the purchase of a home which was to be a charge upon his residuary estate if the purchase was made. Only a fund was created, not an express trust. If, during the life of the widow, the income on the $40,000 fund was not paid to the children, it was probably because of the general understanding in 1915 between the trustees and the court that it would assist and materially aid the widow in paying the rent of a home, as well as supporting and educating the children then reaching maturity.

The court has no quarrel with what the parties did in 1915. Neither will the court permit the parties to take advantage of the situation then created and remake a will for the testator and create a different allocation than he intended. Whether his plan of ultimate distribution was the best is not for any of us to say, or to disturb.

Submit decree in accordance with this decision.