### CHURCH v. WILSON et al.

(Supreme Court, Appellate Division, Fourth Department.   October 8, 1912.)

1. PERPETUITIES (§ 4*)—SUSPENSION OF POWER OF ALIENATION—WILLS—CON-
STRUCTION.

Where testator gave to his wife the use of his real and personal prop-
erty with the right to use all the personalty if necessary, and directed
his executor on her death to sell the remainder, and invest the proceeds
and divide annually the earnings equally between his three children, and
declared that, on the death of the children leaving children, their inter-
est to pass to such children on becoming of full age for their own use,
meanwhile to receive the net earnings, the wife acquired an estate for
life with the right to use the personalty if necessary, and at her death
the income must be paid equally to the children for life, and the re-
mainder vested on their death leaving children, in such children, and the
postponement of the time of delivery to the grandchildren did not unlaw-
fully suspend the power of alienation, for, after the death of the widow,
the estate was in legal effect divided into three shares, and the owner-
ship of each share was suspended only during the lives of the widow and
of the children who had the use and income of such share.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec.
Dig. § 4.*]

2. PERPETUITIES (§ 4*)—SUSPENSION OF POWER OF ALIENATION—WILLS—CON-
STRUCTION.

Testator gave to his wife for life the use of his real and personal prop-
erty, and directed his executor on her death to sell the same, and invest
the proceeds and divide annually the earnings equally between his three
children for life, and declared that, should either child die leaving no
child, the interest should go to his remaining children for life, and,
should the children leave children, their interest should go to such chil-
dren on attaining full age for their own use, meanwhile receiving the
net earnings.  *Held*, that the provision for the disposition of the estate
in case of the death of testator's children leaving no children violated the
statute of perpetuities, but, since the contingency might never happen, the
other provisions of the will were valid, and, on the happening of the
contingency, only the provision violating the statute would be adjudged
invalid, and to that extent testator would die intestate.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec.
Dig. § 4.*]

3. PERPETUITIES (§ 6*)—SUSPENSION OF POWER OF ALIENATION—WILLS—CON-
STRUCTION.

Where a will provides for a future disposition of property by making
alternative limitations, one or the other of which is to take effect ac-
cording to the happening of specified alternative contingencies, the mere
fact that the limitation over on one contingency is invalid because it may
involve unlawful suspension of alienation does not invalidate the other
limitation, which, if the contingency on which it becomes operative oc-
curs, cannot occasion such undue suspension, and whither the disposition
of the precedent estate is so far separable as to be valid in any event,
irrespective of which contingency may occur, the precedent estate may
be sustained, and the determination of the validity of the future dis-
positions may be deferred within the limits of the statutory period until
the events occur on which the decision as to them must be based.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–
53, 56; Dec. Dig. § 6.*]

4. WILLS (§ 697*)—ACTION TO CONSTRUE—ESTOPPEL.

Where a family agreement for the settlement of a testator's estate was
not binding on infant beneficiaries and the executor, the agreement was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not available to them as a basis for estoppel as against a party to the agreement, and such party may maintain an action for the construction of the will of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1671–1675; Dec. Dig. § 697.*]

.5. WILLS (§ 346*)—PROBATE—EFFECT.

A decree admitting a will to probate without the presentation of any issue involving the construction of the will or the effect of any disposition of property contained in the will, as prescribed by Code Civ. Proc. § 2624, is under section 2625, conclusive only as an adjudication of the validity of the will, but not as to its construction, and a party to the proceeding for the probate of the will may maintain an action for its judicial construction.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 803; Dec. Dig. § 346.*]

·6. WILLS (§ 81*)—UNLAWFUL RESTRAINTS ON ALIENATION—VALIDATION BY AGREEMENT OF PARTIES.

Where a clause in a will admitted to probate is invalid because containing an unlawful restraint on alienation, it may not be validated by an agreement of the parties, because the statute represents the public policy of the state, and may not be waived by interested parties.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

7. WILLS (§ 706*)—DISPOSITION OF CASE ON APPEAL—JUDGMENT ON APPEAL.

Under Code Civ. Proc. § 993, authorizing the Appellate Division to modify or affirm the judgment rendered on a trial of an issue of fact by a referee or by the court without a jury, the Appellate Division on appeal from a judgment construing a will may modify the judgment and add appropriate provisions to give a proper construction to the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1683; Dec. Dig. § 706.*]

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Niagara County.

Action by Mary M. Church against Frank B. Wilson, as executors of the will of Timothy H. Pettit, deceased, and others for the construction of a clause in the will of the deceased. From a judgment ·of dismissal on the merits, plaintiff appeals. Modified and affirmed.

Action for a judicial construction of the seventh clause of the will of Timothy H. Pettit, deceased.

Pettit died on the 15th day of July, 1911, leaving a widow and the plaintiff, his daughter, and two other children and five grandchildren, all of whom are parties to this action. He left an estate consisting of personalty to the amount of about $2,000, and real estate of the value of about $15,000. He left a will made on the 4th day of May, 1904, by which he gave certain specific bequests and legacies, and then disposed of the residue of his estate, as follows:

"Sixth. I give and bequeath, to my wife, the use of all my real and personal estate, during her natural life—requiring her to keep the buildings in good repair, and keep up the insurance and taxes and if necessary for her comfort, she may use up all the personal property.

"Seventh. After the death of my said wife, my surviving executor, shall sell the remaining property, both real and personal, at such time and price, as his best judgment shall dictate, and within 2 years, after her death, and invest the proceeds, as he may deem wise, and divide each year, the net earnings therefrom, equally between my 3 children, Wm. E. Pettit, Louisa M. Van Horn, and Mary M. Church—during their natural life. Should either of ·my children die, leaving no child, of their own body, their interest, shall go

---

·*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to my remaining child or children, during their natural life. Should they leave child or children of their own body, their interest shall be given to such child or children, on becoming of full age, for their own use and behoof forever, meanwhile, to remain invested, in the hands of my said executor, they receiving, annually the net earnings thereof."

The widow and Frank B. Wilson were named as executors, and were given power "to convey all my interests necessary to carry out the terms of this will."

On July 25, 1911, before the will had been offered for probate, plaintiff and defendant William E. Pettit, her brother, began an action for partition of the real property left by the testator. The widow and the other daughter, Louisa M. Van Horn. and the wife of the plaintiff William, and the two executors named in the will, were the only defendants. The complaint alleged that the sixth and seventh clauses of the will "are, and each of them is, null and void, and illegal and invalid in law, for the reason that the absolute power of alienation of the said real property is unlawfully suspended thereby, and that the plaintiffs are advised by counsel, and verily believe, that the said Timothy H. Pettit in law died intestate in relation to the said real property and every part thereof, and that the attempted disposition thereof by the provisions and clauses of the said alleged last will and testament aforesaid was and is null and void, and illegal and invalid in law." The prayer for relief was: "Wherefore the plaintiffs demand judgment that the attempted disposition and devise of the said real property in and by the said alleged last will and testament and in and by the aforesaid clauses and provisions thereof was and is illegal and void and of no effect, and that in respect to the said real property the said Timothy H. Pettit died intestate, and that the said real property and every part thereof at the death of the said Timothy H. Pettit vested in the plaintiffs and the defendant Louisa M. Van Horn, the only heirs at law of the said Timothy H. Pettit, deceased, entitled thereto, subject to the dower therein of the defendant Mary A. Pettit." Then followed the usual prayer for partition and division of said real property among the owners thereof.

All the defendants were served with process, and on the next day, July 26, 1911, the parties came together and perfected a settlement, which they embodied in a written agreement signed by the widow and the three children of the testator only. This agreement recites the making of the will by testator and his death, that the will had not been presented for probate, and the pendency of the partition action to have the will declared void. The widow waives and releases the life estate in the real and personal property given to her by the will, and agrees to quitclaim to the remaining executor, Frank B. Wilson, and in substitution she is to receive an annuity of $400 per year from the executor. She also renounces her right to act as executor of the will. Plaintiffs in the partition action agree to "stop said above referred to action in supreme court and pay the costs therein made." All parties consent to the provisions for the widow, and agree that the executor may from the property of the estate carry out such provisions and pay to the widow from the income the annuity. Then follows this provision: "And all the parties hereto do hereby each for him or herself, consent and agree that said will of said deceased may be proved and probated without contest or objection and that they will sign papers giving their consent thereto, and that the said Frank B. Wilson, as Exr. may and shall now take charge of all the real and personal property of said deceased, as provided in said will, at the death of the party of the first part." Then follows a provision by which it is agreed that the executor loan to the plaintiff, Mary M. Church, $800, to be secured by bond of the plaintiff and her husband and mortgage upon their homestead.

On the same day, July 26, 1911, each of the parties to this agreement signed and acknowledged a waiver of the issuance and service upon them of a citation for the probate of the will, and a consent that the will be admitted to probate forthwith. On July 31, 1911, Wilson, the executor, petitioned for probate of the will, and, on filing the written consents and waivers of citation, the surrogate of Niagara county admitted the will to probate by decree in the usual form, containing no special adjudication as to the construction,

validity, or legal effect of any of the clauses or provisions of the will. On August 9, 1911, plaintiff began this action. The $800 loan to plaintiff provided for in the agreement was not made by the executor, for the reason that plaintiff's husband, who had the legal title to the homestead property, refused to sign the mortgage to secure it. The executor Wilson and the infant child of the plaintiff, who appears by guardian, and the children, if any, who may hereafter be born to any of the testator's children, for whom the same guardian has been appointed, are the only defendants who defend this action. Nothing was done by way of carrying out the written agreement between the parties before this action was begun, except the probating of the will.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Montford C. Holley, of Lockport, for appellant.

D. E. Brong, of Lockport, guardian ad litem, for infant respondent.

Abner T. Hopkins, of Lockport, for respondent.

FOOTE, J. [1] We think the intent of testator, as expressed in the sixth and seventh clauses of his will, was to give his widow an estate for life in the residue of his real and personal property, with the right to use the principal of the personal property, if necessary, and, at her death, to give the use and income of what was left, the real property being converted into personal property, one-third to each of his three children during life, with remainder to vest on the death of each in his or her surviving children, or, in the alternative, if any child should leave no surviving child, then a further life estate in the share of the one so dying is given to the survivors. The shares of the grandchildren are not to be paid to them until they become of full age. Until then they receive the income only. This, we think, does not prevent vesting the grandchildren's shares on the death of their parents, or their absolute ownership at that time.

But for the provision for a further life estate in the surviving children of the testator, upon the death of one leaving no surviving children, there would be no ground for the contention that there is an unlawful suspension of the power of alienation or of the absolute ownership of any share, for, after the death of the widow, the estate is, in legal effect, divided into three shares, and the ownership of each share is suspended only during two lives, namely, that of the widow and of the child who has the use and income of that share. Such was the construction placed upon a similar will in Monarque v. Monarque, 80 N. Y. 320. By the first clause of his will, Monarque gave to his wife the use of all his real and personal property during her life. By the second clause, after the death of his wife, he gave and bequeathed the income arising from his estate to his four daughters, to be divided between them share and share alike during their, and each of their, respective natural lives, and remainder to their respective children and to their respective heirs and assigns forever. In the opinion of Andrews, J., giving construction to this will, it is said:

"There was no illegal suspension of the power of alienation of the property devised. The manifest design of the testator by the first and second clauses of the will was to give successive life estates in the property, first to his wife, and then to his daughters, remainder in fee to their children, and this

is the construction of the language used. The gift of the income by the second clause, to his daughters for life, was equivalent to a devise to them of a life estate in the land. * * * But the devise to the daughters for life, although embraced in a single clause in which all are named, is by the well-settled construction of similar clauses a devise to each in severalty of a life estate in one-fourth part of the property. * * * The consequence is that on the termination of the life estate of the widow, and the death of any daughter of the testator leaving children, the remainder in fee, as to the one-fourth part, would immediately vest in possession in such children. The absolute ownership or power of alienation of the estate is not therefore suspended beyond the period of two lives in being at the death of the testator."

Hence, if the three children of the testator each dies leaving children, there can be no unlawful suspension.

[2] The provision for a further life estate, causing a further suspension, in case one of testator's children dies leaving no child, undoubtedly violates the statute against perpetuities, and cannot be sustained, but that is a contingency which may never happen. Should it happen, its effect would be, not to destroy the seventh clause of the will as a whole, but only the limitation beyond the second life, as to which no valid remainder having been created by the will, there would be intestacy. We reach this conclusion upon the authority of Fowler v. Depau, 26 Barb. 224; Schettler v. Smith, 41 N. Y. 328; Matter of Wilcox, 194 N. Y. 288, 87 N. E. 497.

[3] The rule established by these cases, which we think controls the construction of this will, is thus succinctly stated in Chaplin on Suspension of the Power of Alienation (2d Ed.) § 430.

"Where the instrument provides for a future disposition of property, by making alternative limitations, one or the other of which is to take effect according to the happening of specified alternative contingencies, the mere fact that the limitation over upon one contingency is invalid because it might involve undue suspension, or postponement of vesting, does not invalidate the other limitation which, if the contingency upon which it would become operative should occur, could not possibly occasion such undue suspension or postponement."

This rule was applied by this court construing the will in Matter of Wilcox, 125 App. Div. 152, 109 N. Y. Supp. 564. The Court of Appeals in reversing the decision of this court (194 N. Y. 288, 87 N. E. 497) recognizes the authority of the rule in the construction of wills, but held that it did not apply in that case, for the reason that the contingency, the happening of which was to determine which of the alternative provisions of the will should take effect, might not occur or happen within two lives in being.

The will in our case is not subject to this infirmity. The contingency which is to determine which of the alternative provisions for the remainder shall take effect must happen at the end of the second life. It follows that we cannot now say that there has been any unlawful suspension of the absolute ownership of any share in this estate by the seventh clause of the will. Plaintiff herself has living children, as has one of the other children of the testator. The other child is married, and may have children. Should any of plaintiff's children survive her, they will, upon her death, become the owners of the share from which she is to receive the income. If any of

them are then infants, their share will remain in the custody of the executor, but the title and ownership will be completely vested in such infant and alienable. The fact that testator's son, William E. Pettit, now has no child, and may leave none him surviving, does not affect the validity of his life estate in his share. In further treating of alternative future dispositions, Chaplin, in section 432, says:

"And in such cases also, if the disposition of the precedent estate is so far separable as to be valid in any event, irrespective of which contingency may occur in future, then it may be sustained, and the determination of the validity of the future dispositions may be deferred, within the limits of the statutory period, until the events occur upon which the decision as to them must be based."

[4] The court, at Special Term, was of opinion that the seventh clause of this will was invalid under our statutes against perpetuities, but held the plaintiff estopped from maintaining this action on account of the family agreement to which she was a party for the probate of the will, and the settlement and discontinuance of the prior action which she had brought based on its invalidity, and dismissed the complaint on the ground that she had waived and surrendered her right to maintain this action. We think there was no such estoppel or waiver as precluded plaintiff from maintaining this action. Neither the executor nor the infant, who alone are defending this case, were parties to such family agreement or bound by its terms; nor had they at the time this action was begun acted upon the agreement to their prejudice. As the agreement was not binding upon them, it is not available to them as a basis for estoppel. The parties to the agreement and their privies alone can enforce it.

[5] Nor is the plaintiff precluded by the decree of the surrogate admitting the will to probate from maintaining an action for its judicial construction. This decree has the effect only prescribed by section 2625 of the Code of Civil Procedure. It is conclusive as an adjudication of the validity of the will, but not as to its construction, except in cases where a party expressly puts in issue the construction or effect of any disposition of property contained in the will as prescribed by section 2624 of the Code and the surrogate actually determines such questions.

[6] Moreover, if the seventh clause of this will could not be sustained because containing an unlawful restraint upon alienation, it could not be validated by agreement of the parties. The statute can no more be violated by agreement of the parties than by will. It represents the public policy of the state, and is not such a statute as may be waived by interested parties on the theory that it was made for their benefit.

[7] We conclude that this court should, as required by section 993 of the Code, grant such judgment as the facts warrant, without awarding a new trial. The judgment appealed from should, therefore, be modified by striking out all that part which dismisses the complaint upon the merits, and by adding appropriate provisions to give construction to the will in accordance with this opinion, with separate bills of costs of this appeal to the defendant Wilson, as ex-

ecutor, payable out of the estate, and to Brong, as guardian ad litem, to be paid by plaintiff. All concur, except KRUSE, J., who dissents and votes for affirmance, and ROBSON, J., who dissents and votes for reversal.