In the Matter of the Accounting of CENTRAL HANOVER BANK & TRUST COMPANY, as Successor Trustee under the Will of JAMES F. D. LANIER, Deceased.

Surrogate's Court, New York County, March 28, 1949.

*William G. Barr* and *Malcolm G. Spooner* for successor trustee, petitioner.

*Walter L. & Robert M. Post* for Harlan S. Perrigo, as executor of Katharine L. Standish, deceased, and as administrator *c. t. a.* of Mary McC. Lanier, deceased, respondent.

*F. R. Appleton, Jr.,* and *C. C. Turner, Jr.,* for United States Trust Company, as ancillary administrator of the estate of Anna G. C. Rott, deceased, and as ancillary administrator *d. b. n.* of the estate of William J. Cravens, deceased, and others, respondents.

*Clark, Carr & Ellis* for Mary A. Fisk and another, respondents.

*White & Case* for New York Trust Company, as administrator *c. t. a.* of Edward Winslow, deceased, and as executor of James N. Winslow and another, deceased, respondent.

*Gallop, Climenko, Gould & Lynton* for Winslow Little and another, individually and as executors of Marguerite W. Little, deceased, and others, respondents.

*Lyman Sessen* for Central Hanover Bank & Trust Company, as administrator *d. b. n.* of the estate of Ridgeway M. Cravens, deceased, and as executor of Rachel B. Raymond, deceased, respondent.

*Morrison T. Hankins* and *Charles B. Clancy* for Elliott B. McKee and others, respondents.

*Hugh J. Jamison,* for Katherine W. Comly and others, respondents.

*George C. Norton,* special guardian for Charles E. Walcott and another, infants, respondents.

*Harold Berger,* special guardian for Charles Lanier and others, infants, respondents.

COLLINS, S. This is a proceeding for the judicial settlement of the account of the successor trustee of the trust for the benefit of Katharine L. Standish created under the will of her father, James F. D. Lanier, who died in 1881. The petitioner also requests a construction of the will.

There have been probated as the will of decedent an initial instrument and nine codicils. Decedent was survived by a widow and eight children. The will creates a $60,000 trust for the benefit of decedent's daughter, Louisa M. Lanier, and directs that the principal of that trust revert to and form a portion of the residuary estate on the death of the beneficiary. There is also created in the will a trust of $160,000 for the benefit of

another daughter, Margaret Pumpelly, with the remainder payable to her issue and in default of issue to revert to the residuary. The will provides for division of the residuary estate into six equal shares. One of these shares is bequeathed outright to decedent's son, Charles Lanier, and another is bequeathed outright to his daughter, Elizabeth L. Dunn. A third share is bequeathed in trust for the benefit of decedent's daughter, Katharine L. Standish (referred to in the will as Catherine Farrington). The last-mentioned share is here accounted for. A fourth share is given in trust for the benefit of a daughter, Drusilla L. Cravens, and a fifth share is given in trust for the benefit of a son, Alexander C. Lanier. The sixth share is subdivided into three equal subshares, one in trust for a daughter, Mary L. Stone, and two other shares in trust for the respective benefits of Elizabeth G. Bacon and Mary Louisa Schenck, children of Mary L. Stone.

Louisa M. Lanier died in 1885 and the principal of her $60,000 trust was distributed as part of the residuary estate. One sixth of that principal was added to the corpus of the Katharine L. Standish trust here accounted for. Another one-sixth share was paid into the trust for Alexander C. Lanier.

Alexander C. Lanier died in 1895 without issue. The will provides that in that event, the fund be disposed of as a portion of the residuary estate. At the death of Alexander there were in existence two trusts, each consisting of a major share of the residuary, and the three smaller trusts for Mrs. Stone and her two children, resulting from the subdivision of another major share. The principal of Alexander's trust was distributed, without court direction, among the two absolute legatees and the continuing trusts with the result that the Standish trust received one fifth of the fund. That distribution to the Standish trust included a fund which, having been held in trust for the life of Louisa Lanier, was paid on her death into the trust for Alexander and was held in trust for his life. The distribution to the Standish trust on the death of Alexander should not have included one fifth, or any part, of the one-sixth share of the trust for Louisa which had come into the Alexander trust on Louisa's death, since that fund could not be further suspended following the death of Alexander. That distribution occurred over fifty years ago.

Drusilla L. Cravens died in 1903 and exercised a power of appointment granted to her in her father's will with respect to the remainder of her trust. Mary L. Stone died in 1909 sur-

vived by her two daughters, one of whom, Elizabeth G. Bacon, died in 1920 survived by issue. The other daughter, Mrs. Schenck, is living and has issue.

As a result of the death in 1945 of Katharine L. Standish, who was the survivor of decedent's children, all of the residuary trusts have terminated except the Schenck trust which originally consisted of a one-eighteenth (one third of one-sixth) share of the residuary. Katharine L. Standish was survived by neither husband nor issue. The principal of the Standish trust is now distributable pursuant to the first codicil which directs that the trust principal shall become a portion of the residuary. The Standish trust is comprised of the following: A — the original one sixth of the residuary (the primary share); B — one sixth of the $60,000 trust for Louisa (received directly from the Louisa trust on her death); C — one fifth of the original trust for Alexander (one fifth of the primary Alexander fund, and D — one fifth of the share received by the Alexander trust from the Louisa trust on the latter's death (one thirtieth of the Louisa trust). Fund A has been held in trust for one life, fund B has been held in trust for two lives, fund C has been held in trust for two lives and fund D has been held in trust for three lives. Therefore only fund A can be added to an existing trust or augment a remainder held in trust for a life. Question has arisen as to whether this primary fund should be divided into six parts corresponding to the original division of the residuary estate upon decedent's death or, by reason of the deaths of income beneficiaries of other trusts, should be divided into a lesser number of shares. The court holds that this fund is to be divided into four parts. Two of these parts are payable to the representatives of Charles and Elizabeth, decedent's children who received outright legacies of one sixth of the residuary. A third part is allocable to the Cravens trust which has vested in remaindermen. A fourth part is assignable to the trusts for the Stone family. One of the three trusts created for that family is still continuing. This division eliminates from consideration the Standish trust from which the fund is here derived and the Alexander C. Lanier trust which reverted to the residuary estate pursuant to decedent's will. There exists no basis for repaying any part of this fund to the trust from which it is derived only to go through an identical procedure again and again as diminished shares each time come back into the trust. No matter how many times this performance would be repeated, an infinitesimal part of the fund would always remain for disposition. A like reason exists

for not paying any part of the fund into the Alexander trust because here again there would be the question of dividing and subdividing ad infinitum. In dividing the Alexander trust into five shares instead of six following his death a proper division was made. A similar problem arose in *Matter of Friend* (168 Mis. 607, affd. 257 App. Div. 924, mod. 283 N. Y. 200) in which Surrogate FOLEY excluded the trust from which the fund was derived in determining the number of shares into which a division would be made. A like result had been reached in *Boynton* v. *Lahens* (81 Misc. 352). In *Matter of Macy* (72 N. Y. S. 2d 481) Surrogate DELEHANTY held that the text which read " to vest in and form part of my residuary estate " meant to vest in and benefit the other residuary legatees in the proportions which their original shares fixed. The same principle is here applicable as the best means of carrying out the intention of decedent and the only means of avoiding the futile and senseless circuity involved in routing and rerouting subdivided shares of principal time after time through the same trusts in an endless process.

As to the part allocable to the Cravens trust some further consideration is required. Decedent's daughter, Drusilla, was given a power of appointment in respect of the principal of the trust for her benefit. She exercised the power by continuing some of the fund in further trust. Obviously such appointment in further trust would not be valid in respect of the fund here under consideration because, having been held for the lives of Katharine L. Standish and Drusilla Cravens, the property could not be further suspended. However, the will of Drusilla contains the following provision: " If for any cause, any of the appointments, provisions or distributions * * * herein made of the share or portion of my father's estate held for me in trust, fail to take effect the amount of such share or portion so failing to take effect * * * I direct the Trustee of my father's Will to divide and distribute in equal shares among my children living at the time of my decease, who shall receipt for and acknowledge the advances made to my children during my lifetime, as above mentioned, and the issue of any deceased child, share and share alike, per stirpes and not per capita ". The fund allocable to the Cravens trust can pass properly under the appointment insofar as the appointment in the donee's will made absolute dispositions and as to the balance, which could not be appointed validly in further trust, disposition can be made under the above-quoted provision of her will.

In respect of the part allocable to the trusts for the Stone family further complications arise. There were three trusts created for this family under decedent's will, each trust constituted of a one-third share of one sixth of the residuary, or in other words, each consisting of one eighteenth of the residuary. One trust was for decedent's daughter, Mary L. Stone, and on her death on further equal trusts for her daughters, Elizabeth G. Bacon and Mary L. Schenck. Another trust was for Elizabeth G. Bacon with remainder to her issue, and if none, to revert to the residuary. The third trust was for Mary L. Schenck, with remainder to her issue, and if none, to revert to the residuary. Mrs. Stone died in 1909 survived by her daughters and the principal of her trust was added to the trusts for the daughters. Mrs. Bacon died in 1920 survived by issue to whom the remainder of her trust was payable. Mrs. Schenck is living. The one-twelfth share of the primary Standish fund allocable to the trust for Mrs. Stone has been held for two lives, namely that of Katharine L. Standish and that of Mrs. Stone, and cannot be further suspended. It is conceded that an intestacy results as to this fraction. Another one-twelfth has been held for the lives of Katharine L. Standish and Elizabeth G. Bacon but the trust for the latter terminated prior to the Standish trust. The fund can be validly paid to the remaindermen of the Bacon trust. The one-twelfth share to be added to the Schenck trust will not result in a violation of the statute against perpetuities.

Certain of the parties contend that, except for one twelfth of the Standish fund, a valid disposition may be made of that fund under the doctrine of marshalling of assets. They suggest that the portion of the fund that has been held for two lives be used in payment of the shares of the outright legatees. This they contend would permit a valid distribution of the accretions to the Standish fund from the Louisa and Alexander trusts and would leave the Standish primary fund to be used in making up the balance of the outright shares and the shares passing to the Cravens and Stone trusts. The theory of marshalling of assets was first applied by the courts to work equity between creditors in a situation where one creditor could resort to a particular fund only and another creditor could resort either to that same fund or to another fund. The courts required the second creditor to resort to the alternative fund in order that the creditor who was restricted to a single fund might have his debt satisfied. The theory has been adopted to validate the

exercise of a power of appointment and the courts have effectuated the exercise of a power of appointment of property held in suspense for the statutory period by directing that such property be used to pay the debts of the donee of the power and the outright gifts in the donee's will and the individual property of the donee be used in the creation of the appointed trust (*Fargo* v. *Squiers,* 154 N. Y. 250). There has not been cited to this court a single case involving the application of the marshalling theory to a situation in any wise analogous to the instant one. The briefs of the parties making this contention rely entirely upon the decision in *New England Trust Co.* v. *Wilcox* (41 N. Y. S. 2d 527, affd. 267 App. Div. 976). In that case the decedent was a resident of Massachusetts and the common-law rule of perpetuities applying to personal property permitted a trust to be created for any number of lives in being. The plan of the will called for an outright payment of $50,000 and the holding of the balance in trust for a period in excess of two lives. The trust assets consisted of personal property in Massachusetts and real estate in New York. New York law governed the validity and effect of the trust comprised of realty (Decedent Estate Law, § 47). The court directed that the New York real estate be used to pay the outright legacy and that the personal property be held in trust. An invalid disposition was thus avoided. In the cited case, as in the power of appointment cases, there were involved two separate and clearly identifiable bodies of property. The result reached was that the terms of the will were completely carried out and all the legacies, whether outright or in trust, were satisfied. Thus equity was accomplished. A like result has been reached in the power of appointment cases in that the desires of the testator have been effectuated and the recipients of his bounty have been in nowise prejudiced. The rule of marshalling of assets is not a vested right or lien founded on contract but rests upon equitable principles called into action by the benevolence of the court. (*Farmers' Loan & Trust Co.* v. *Kip,* 192 N. Y. 266, 283). Where equities are lacking, the doctrine of marshalling has been rejected. (*Matter of Berwind,* 181 Misc. 559, 564–565.) In the instant case marshalling neither will permit the completion of the testamentary scheme nor avoid a partial intestacy. It will only be a disturbance of the distribution resulting from normal operation of law in order to effect a rearrangement of the shares of the parties to the greater advantage of some and to the detriment of others. The rule of marshalling of assets has no application in the instant case.

Reverting now to the fund heretofore identified as fund B (the accretion to the trust from the trust for Louisa), that fund has been held for two lives and cannot be further suspended in trust. Two one-quarter shares may be paid to the two outright residuary legatees. One quarter is allocable to the Drusilla Cravens trust and, of course, could not be suspended for the life of Drusilla. A problem thus arises as to whether the power of appointment granted Drusilla applies to this portion. Whether or not it does, the same result is reached. If the power applies, the gifts of the remainders as appointed by Drusilla can be accelerated provided the remainders given were vested in the sense that specified individuals would receive the remainders under every conceivable circumstance (*Kalish* v. *Kalish,* 166 N. Y. 368; *Matter of Silsby,* 229 N. Y. 396; *Matter of Durand,* 250 N. Y. 45; 164 A. L. R. 1309 and 1448). Except for some small legacies, which presumably have long since been paid, the remainders are contingent. The alternative disposition in the donee's will, intended by the donee to cover any invalid exercise of the power, is a gift to her children living at her death and to the issue of deceased children. This also is contingent. Hence no appointment by the donee can be accelerated. The alternative gift under decedent's will intended to be effective in the event of an ineffectual exercise of the power is to the children of the donee living at her death and is contingent. Therefore this property passes as intestate property of the decedent.

The final quarter of fund B is initially assignable to the Stone family trust. The portion that has been suspended for three lives, namely, those of Louisa, Katharine and Mrs. Stone, passes as intestate property of decedent. On the death of Mrs. Stone the principal of her trust was to be divided into secondary trusts for Mrs. Bacon and Mrs. Schenck with remainders to their issue. Obviously continuation of the fund in such secondary trusts would add a further suspension for a fourth life in each instance. The remainders not being indefeasibly vested cannot be accelerated even if the intervening measuring lives be stricken out. Another portion of the fund has been suspended for three lives, namely those of Louise, Katharine and Mrs. Bacon. It is not possible to accelerate the remainders and again there is an intestacy. The same disposition is required of the portion attributable to the Schenck trust.

Fund C which came into this trust from the Alexander trust must be given the same treatment as fund B. Fund D was held

for two lives prior to its payment into the Standish trust there to be held for a third life. An error was made in making payment of such fund into the Standish trust. The property at that time should have been disposed of as intestate property of decedent.

As to the disposition to be made of the intestate property of decedent question has been raised as to the persons entitled to payment. Decedent bequeathed to his widow an annuity of $15,000, a legal life estate in residential property and other benefits. The will provides that such provisions were "to be in lieu and bar of all dower and claim of every kind which she may have or be entitled to against my estate." The acceptance of such provisions would bar the estate of the widow from participating in any portion of decedent's property passing under intestacy. (*Matter of Benson,* 96 N. Y. 499; *Matter of Silsby,* 229 N. Y. 396, *supra; Chamberlain* v. *Chamberlain,* 43 N. Y. 424.) The petition alleges that the widow accepted the provisions for her benefit. The widow was an executrix. The answer of the widow's representative denies any knowledge or information sufficient to form a belief as to such allegation in the petition. Prima facie it appears that the widow accepted the will provisions. If any party desires to present proof upon this issue, a hearing will be had for such purpose.

Decedent left eight children. The daughter, Louisa, died intestate leaving as her distributees the seven other children. This permits a division of the intestate property of decedent into seven major shares. The estate of Katharine L. Standish is represented by her executor. The estate of Charles Lanier is represented by an executor and the estate of Drusilla L. Cravens is represented by an ancillary administrator *c.t.a.* In respect of these estates there is no difficulty in making payment of intestate shares. The estates of Alexander who died in 1895, of Margaret Pumpelly who died in 1890, of Mary L. Stone who died in 1909, of Elizabeth L. Dunn who died in 1910, have no representatives now acting. It can be seen that by reason of the dates of death, generations of decedent's descendants are involved in this proceeding. Some of the descendants of distributees left wills and others died intestate. In considering the propriety of authorizing payment to the now living descendants of distributees or of descendants of legatees under the wills of distributees, there are questions of solvency and unpaid obligations to creditors and for taxes. The decree will direct payment of the intestate property to the representative of each deceased distributee of decedent.

An additional question has been raised as to the disposition of certain surplus income in the Alexander Lanier trust. The trust for that son limited the annual income payment to him to $12,000 but made no disposition of the annual income in excess of that sum. On his death this surplus was in an accumulated sum of substantial amount and was divided by the executors of decedent into five shares, one of which was paid into the Standish trust. It seems that this payment was added to the principal of the trust here accounted for. The parties raising this question contend that this void accumulation should have been treated as intestate property of decedent and should not have been put into the Standish trust. It would appear that the accumulation should have been paid to the person or persons presumptively entitled to the next eventual estate. (Real Property Law, § 63, derived from L. 1896, ch. 547, § 53, originally revised from Rev. Stat. of N. Y., part II, ch. I, tit. II, § 40.) The trustee of the Standish trust obviously was not the person presumptively entitled to the fund. The Standish estate does not raise the issue and does not assert any claim to the money. The parties who now raise the question or their virtual representatives (*Matter of Balfe,* 295 N. Y. 975) were parties to an accounting proceeding settled in this court by decree made June 22, 1945. The parties could have raised in the prior accounting proceeding the same question which they have now raised as to the constitution of the trust principal and their failure to raise such issue has precluded them from litigating the matter at this time.

In the event a hearing is not desired for the purpose herein indicated, a decree may be submitted, on notice, construing the will and settling the account.