S. Samuel Di Falco, S.
This is an intermediate accounting of the successor trustee. Testator died on April 22, 1910. He was survived by his mother, Babette Newhouse, who was 83 years of age; his sister Kate Newhouse, aged 58; brother Samuel, aged 56; sister Hattie Newhouse, aged 55; sister Jennie Newhouse, aged 48; sister Ella Newhouse Langfeld, aged 44; sister Laura Newhouse Irwin, aged 41; and two nieces, Carrie Kingsberry Merkley, aged 29 and Ruth T. Petrovic, aged 22.
In paragraph second of his will which is dated November 4, 1904 testator provided as follows: ‘ ‘ second : I hereby direct my executors and Trustees hereinafter named, or such of them as may qualify, to set apart a certain sum of money out of my estate and invest the same so that it will yield an income of Ten Thousand ($10,000.) Dollars per year net, and to pay the said sum of Ten Thousand Dollars per year to my beloved mother in equal monthly installments during the term of her natural life. After her death I direct that the aforesaid principal sum and any accumulated income shall revert to and become a part of my residuary estate.”
In paragraph thibd he directed that “ all the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever the same may be situated” be divided into five equal shares or parts. He directed in subdivision (a) thereof that one half of such part be paid to his sister Hattie outright and the other half thereof be held in trust and the income paid to her during her life. He then provided that: “Upon her death, in the event that she shall have married during her life and leave lawful issue her surviving, then I direct that such one-half share or part shall be divided among her lawful issue, share and share alike. In the event that she dies without leaving lawful issue her surviving, then I direct that such one-half share or part shall become part of my residuary estate and follow the distribution hereinafter provided.” He made the same provision for his sister Jennie in subdivision (b). In subdivision (c) he directed that one of the shares be held in trust for his sister Ella during the term of her life. He directed that: “ (U) upon her death such share or part shall be divided among her lawful issue her surviving, share and share alike. In the event that she dies leaving no lawful issue her surviving, then I direct that such share or part of my estate in this subdivision mentioned shall revert to and become a part of my residuary estate.” A similar provision of one *1024 share being held in trust was made in subdivision (d) for the life of his sister Laura with the same direction for the disposition of the principal upon her death. The remaining* one-fifth share was then to be divided into two parts and each held in trust for the benefit of a niece. These two trusts also contained the same provision as made for his sisters Ella and Laura for the disposition of the principal upon the death of a niece.
Paragraph fourth of testator’s will reads as follows: 1 ‘ fourth : All the rest, residue and remainder of my estate I direct my Executors and Trustees hereinafter named, or such of them as may qualify to invest and keep invested in such manner and form as to them may seem best and most advantageous, and to pay over the income thereof in equal shares to my sisters and nieces me surviving. Upon the death of my sisters, ella newhouse langfeld and laura new-house irwin, I direct that said trust shall cease and that said residuary estate so invested as aforesaid shall be distributed according to the Laws of the State of New Tork as though I had died intestate as to said residuary estate.”
In paragraph sixth testator stated that he made no provision for his brother Samuel because he considered that he had ample means of his own. Samuel was appointed one of the executors and trustees. The will contains no mention of testator’s sister Kate although she would be one of the income beneficiaries as a sister in the trust of the residue set up in paragraph fourth as aforesaid.
Kate died on November 15, 1913, intestate and without issue. Testator’s mother died intestate on March 15,1916. Testator’s brother died intestate on September 23, 1930, survived by his wife who has since died. His niece Kuth died intestate on April 18, 1938 survived by her husband and a daughter. The husband is still living. The daughter died on August 31, 1953, survived by her husband. They are parties to this proceeding. Testator’s sister Jennie died testate on March 7, 1950, without issue. Her will gave all of her property to her sister Hattie. The latter died testate on July 9, 1950, without issue. Her will gave all of her property in equal shares to her sisters Ella Newhouse Langfeld and Laura Newhouse Irwin. The latter died testate on December 15, 1950, without issue. Her will gave all of her property to her sister Ella who is still living and a party to this proceeding. Testator’s niece Carrie died intestate on May 30, 1958, survived by her son Edwin K. Merkley who is also a party to this proceeding.
*1025 It appears that after the death of testator’s mother in 1916 an agreement dated June 2, 1916 was executed between Louis N. Kramer and Samuel Newhouse as trustees and testator’s four sisters, Hattie, Jennie, Laura and Ella and his two nieces, Carrie and Ruth. That agreement recited that testator’s will provided that a certain annuity to be paid to his mother and upon her death the principal which was invested to yield the amount of the annuity should revert to his residuary estate. It further recited that paragraph fourth of the testator’s will provided that said principal be invested by the trustees and the net income be divided in equal proportions among the parties of the second part, i.e., the sisters and nieces of the testator. The agreement then provided that the income earned by the trust created in paragraph fourth of the will be paid one fifth to each of the four sisters and one tenth to each of the two nieces. The parties of the second part authorized the trustees to continue, the payment of the fund as therein arranged so long as it shall remain a trust and until it has been dissolved by “reason of the happening of the event provided for in Paragraph ‘ Fourth ’ of the Will ” of decedent.
On May 5, 1938, which was after the death of testator’s niece Ruth, another agreement was executed between Hattie New-house (who had qualified as a trustee on Nov. 14, 1930), as sole surviving trustee and testator’s four sisters, Hattie, Jennie, Laura and Ella, his niece Carrie and Babette Townsend, the daughter of testator’s deceased niece Ruth. This agreement recited that Babette Townsend was then entitled to receive the principal of the trust held for the benefit of her mother pursuant to subdivision (f) of paragraph third of the will and claimed the right to receive during the lifetime of Ella Newhouse Langfeld and Laura Newhouse Irwin, the share of the income of the trust under paragraph fourth of the will which her mother had received prior to her death. The agreement then provided that $500 would be paid to said Babette Townsend on account of the principal of the trust for the benefit of her deceased mother and she consented that the balance of the principal of said trust shall remain part of the fund held by the surviving trustee pursuant to paragraphs third and fourth of the will until there shall be a general division and distribution thereof. Until the termination of the trust under paragraph fourth of the will, the surviving trustee and her successor, was authorized to pay the net income of the fund held pursuant to paragraphs third and fourth in the following proportions: 17 % each to sisters Hattie and Jennie; *1026 23% each to sisters Laura and Ella and 10% each to niece Carrie and grandniece Babette.
The transfer tax was fixed by order of September 12, 1911. The provision for decedent’s mother was considered a life annuity of $10,000 and valued at $25,105 as of the date of decedent’s death by the Superintendent of Insurance of the State of New York.
The account of the executors was settled by a decree dated January 16, 1913. The decree authorized the executors and trustees to retain a mortgage of $215,000, with interest at the rate of 5% per annum for the payment of $10,000 per year net to decedent’s mother.
The account of Louis N. Kramer, deceased executor, as rendered by his executors, was settled by decree dated February 26, 1932. The petition therein described decedent’s mother as a life beneficiary under his will. A copy of the agreement dated June 2, 1916 was included in the account.
Hattie Newhouse named as an executor and trustee did not qualify as an executor but qualified as a trustee on November 14, 1930 after the deaths of the two original trustees. She died on July 9, 1950 and her account as surviving trustee was rendered by her estate representatives and settled by decree dated March 27, 1953. Copies of the 1916 agreement and the agreement dated May 5, 1938 were annexed to the petition.
The questions for construction raised by the petitioner are as follows: (1) whether the bequest in paragraph second of the will for testator’s mother is an annuity or a trust; (2) upon the mother’s death did said bequest pass to and become subject to administration under the provisions of paragraph third or the provisions of paragraph fourth of the will; (3) if it passed under paragraph third, to what extent can the provisions of that paragraph lawfully be given effect; (4) if it passed under paragraph fourth, to what extent can the provisions of that paragraph lawfully be given effect; (5) did the trusts established under subdivisions (a) and (b) of paragraph third (for the benefit respectively of testator’s sisters Hattie and Jennie) terminate upon the death of each or did each continue in trust under the provisions of paragraph fourth and terminate upon the death of Laura; (6) the effect of the agreements dated June 2,1916 and May 8,1938 upon paragraphs second, third and fourth of the will; (7) does the remainder of the trust created in paragraph fourth pass upon the termination thereof to decedent’s heirs determined as of the date of his death or as of the date of termination of the trust, and (8) the respective values of the annuity or trust created in *1027 paragraph second of the will and of the trusts created in paragraphs third and fourth thereof at the time of their establishment, and the values of such trusts as of the dates of their respective terminations or, as to those still in effect, of the closing date of the period accounted for herein. A stipulation of facts has been submitted.
The questions presented for construction will be considered and discussed seriatim. “ ‘ An annuity is a stated sum per annum, payable annually unless otherwise directed ’ (Booth v. Ammerman, 4 Bradf. 129, 133) ”. (Matter of Ferris, 3NY 2d 70, 77.) “If a testator sets up a fund and directs out of the income the payment of a certain amount during the lifetime of a person regardless of the life of the trust, it is an annuity because a charge is created.” (Matter of Smathers, 133 Misc. 812, 817.) “ An annuity is a yearly payment of a certain sum of money. Where a trust is charged with the payment of annual sums, the recipient is now often termed an ‘ annuitant The term ‘ annuitant ’ has acquired a more extended meaning than at common law, and frequently denotes a trust beneficiary entitled to annual payments. (Matter of Kohler, 193 App. Div. 8; revd., without reference to this question, 231 N. Y. 353; Matter of Smathers, 133 Misc. 812, 815.) ” (Matter of Gabler, 140 Misc. 581, 587.) Language quite similar to that used herein was held to be an annuity in Matter of Savin (171 Misc. 818, 819). The will therein read as follows: “To set aside so much of the principal of my estate as will produce an annual net income of Two thousand four hundred ($2,400.00) Dollars and to pay to my adopted daughter, Muriel Elisabeth Savin, said net income of Two thousand four hundred ($2,400.00) Dollars annually at the rate of Two hundred ($200.00) Dollars monthly, payable quarterly. Upon the death of my adopted daughter, Muriel Elisabeth Savin, I give, devise and bequeath to Anna Mary Savin, my wife, and to her heirs and assigns forever, the principal necessary for the creation of the foregoing trust.”
It is obvious that testator’s mother was the primary object of his particular solicitude and concern and that his sisters and nieces were next in line. The dominant underlying principle in the cases is to carry out as far as possible within the meaning of the statute, the intention of a testator (Matter of Durand, 250 N. Y. 45, 53; Matter of Fischer, 307 N. Y. 149,161). When a testator ‘ ‘ bequeathes a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled, merely by a direction in the will that the money *1028 is to be raised in a particular way, or out of a particular fund ’ (Pierrepont v. Edwards, 25 N. Y. 128, 131.)
“ The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and effectuated as far as is consonant with principles of law and public policy.
“ This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed. (Collister v. Fassitt, 163 N. Y. 281; Robinson v. Martin, 200 N. Y. 159, 164; Williams v. Jones, 166 N. Y. 522, 523; March v. March, 186 N. Y. 99, 103.) ” (Matter of Fabbri, 2 N Y 2d 236, 239-240.)
1 ‘ A cardinal principle of construction is that the intention of the settlor is to be sought in all his words, and when ascertained is to prevail unless contrary to public policy or an established rule of law. (See Matter of Buechner, 226 N. Y. 440, 444; Robinson v. Martin, 200 N. Y. 159, 164; Mullarhy v. Sullivan, 136 N. Y. 227, 230-232.) ” (Matter of Day, 10 A D 2d 220, 222.)
Testator’s use of the words “ and any accumulated income ” in providing for the disposition of the principal of the fund upon the death of his mother must be considered. The difference in the language contained in paragraph second of the will from the usual trust language used in paragraphs third and fourth must be regarded as of great significance in determining the intention of decedent. (Matter of Bamberger, 163 Misc. 549.) The intention of a testator “is to be sought in all his words, and, when ascertained, is to prevail” (Matter of Buechner, 226 N. Y. 440, 444, cited in Matter of Maybaum, 296 N. Y. 201, 205).
The court, therefore, determines that an annuity was created for testator’s mother. Therefore, her life is not to be considered as a measuring life for the trusts contained in the will. (Matter of Fischer, supra, p. 157; Buchanan v. Little, 154 N. Y. 147; People’s Trust Co. v. Flynn, 188 N. Y. 385; Matter of Guggenheimer, 168 Misc. 1; Matter of Kerbs, 130 N. Y. S. 2d 259.)
It appears that the parties or their predecessors and privies have acquiesced in the interpretation of this paragraph second as creating an annuity for testator’s mother. It was taxed as an annuity in the transfer tax proceeding. The decree dated January 16, 1913 which settled the account of the executors directed them to retain a certain mortgage for the payment of *1029 $10,000 net to testator’s mother. The 1916 agreement of the trustees and the beneficiaries recited that the will provided that a certain annuity be paid to decedent’s mother.
It has been held that such interpretation is not to be disregarded ‘ ‘ particularly when the language of the testatrix is capable of the construction which the trustees and the parties have given it in practice (Starr v. Starr, 132 N. Y. 154, 159; Matter of Gulbenkian, 59 N. Y. S. 2d 445, 448; Matter of Shoff, 93 N. Y. S. 2d 626, 631).” (Matter of von Miklos, 11 Misc 2d 939, 941.) Surrogate Cox further stated therein at page 941: ‘ ‘ If the will created trusts, it would follow that the beneficiary of each trust would have been entitled to the full net income irrespective of the fact that the amount of such income was in excess of the fixed sum specified in the will (Matter of Clark, 251 N. Y. 458) but the practice of the trustees, acquiesced in by all parties, has been to limit each beneficiary to annual payment of the amount stated in the will and to pay the excess income to the residuary legatee. In a decision determining the disposition required to be made of the separate funds on the deaths of the respective beneficiaries, Surrogate Collins repeatedly referred to the annual payments under the will as annuities {Matter of von Miklos, 116 N. Y. S. 2d 69), a reference which was consistent with the then attitude of the parties to that proceeding.” In discussing prior accounts of an executor and trustee it was stated in Matter of Myers (178 Misc. 91, 93) as follows: ‘ ‘ In each of said accounts payments were reported as having been made on account of these annuities. Both prior and subsequent to each previous accounting all interested parties treated the questioned provisions as creating annuities. The exact amount specified by the testator has been paid periodically up to the date of the present account to or for each respective beneficiary and the surplus income has been divided among the residuary legatees. Now, for the first time since the will was admitted to probate in 1919, a different interpretation of the questioned paragraphs is urged by the legal representative of the deceased grandnephew and by a successor to the interest of the deceased sister.” (See, also, Matter of Ryan, 11 Misc 2d 205, 209.)
Upon the death of the testator’s mother the principal of the fund passed to and became subject to administration under the provisions of paragraph fourth of the will. The latter paragraph contains the provisions for the true “ residuary estate It is apparent that after directing that a sufficient sum be set apart to pay the annuity of $10,000 to his mother, the only manner in which the testator could describe the property to be *1030 used to establish, the trusts for his sisters and nieces was by using the phrase ‘ ‘ all the rest, residue and remainder of my estate ” (par. third). Instead of being the true residuary trusts these trusts created in said paragraph third are more in the nature of general trusts. The true residuary trust is contained in paragraph fourth of the will and was intended to take up the principal of the fund in paragraph second and any of the paragraph third trusts where the income beneficiary thereof died without surviving issue. Testator used the same words ‘1 my residuary estate ’ ’ in directing the disposition of both the fund in paragraph second upon the death of his mother and of the trusts in paragraph third in the event that an income beneficiary died without surviving issue. He could only have intended that paragraph fourth be the true residuary estate. “ The testator’s intention collected from the whole will taken together and not from detached portions alone, together with all the parts construed in relation to each other, forms one consistent whole and makes the two residuary clauses reconcilable. (Matter of Title Guar. & Trust Co., 195 N. Y. 339, 344.) ’ ’ (Matter of Orrell, 5 Misc 2d 340, 342.)
It was stated in Matter of Title Guar. & Trust Co. (195 N. Y. 339, 344) as follows: “‘A testator’s intention is, however, to be collected from the whole will taken together, and not from detached portions alone. * * * And all the parts and provisions of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole and operate together; and contradictory clauses should, if possible, be reconciled accordingly. ’ (Schouler on Wills [3d ed.], § 468.) ” (See, also, Noffett v. Elmendorf, 152 N. Y. 475, and Matter of Gray, 176 Misc. 829, 831, affd. 266 App. Div. 732, affd. 292 N. Y. 532.)
The court having determined that the benefit for decedent’s mother was an annuity and upon her death passed to and was administered under paragraph fourth the provisions of the latter paragraph as far as this fund is concerned can lawfully be given effect. Being an annuity the life of testator’s mother is not considered a measuring life. The trust in paragraph fourth is measured by only two lives, Ella Newhouse Langfeld and Laura Newhouse Irwin, now deceased. The fund constituting the annuity can legally be held until the death of Ella Newhouse Langfeld.
The question of the possible invalidity of the trusts established in paragraph third of the will concerns only those for the benefit of Hattie Newhouse in subdivision (a) and of Jennie Newhouse in subdivision (b). Both died without issue, The *1031 trusts in subdivision (c) and subdivision (d) for the benefit of Ella Newhouse Langfeld and of Laura Newhouse Irwin respectively would also be measured by the same lives under paragraph fourth. Both of testator’s nieces, beneficiaries of the trusts in subdivisions (e) and (f) died leaving issue. “Lewis on Perpetuities (501,2), says, that where a limitation is made to take effect on two alternative events, one of which is too remote and the other valid as within the prescribed limits, although the gift is void so far as it depends on the remote event, it will be allowed to take effect on the happening of the alternative one.” (Schettler v. Smith, 41 N. Y. 328, 336.) (See, also, Matter of Gallien, 247 N. Y. 195, 200; Flatter of Schwamm, 53 N. Y. S. 2d 654; Matter of Fairchild, 81 N. Y. S. 2d 111.)
When Hattie died without issue on July 9,1950, the principal of her trust continued under the residuary trust in paragraph fourth of the will until the death of Laura Newhouse Irwin on December 15, 1950. Similarly when Jennie died without issue on March 7,1950 her trust could continue for another life under paragraph fourth and also would terminate upon her sister Laura’s death.
The invalid third life of Ella Newhouse Langfeld can be excised (Matter of Wilcox, 194 N. Y. 288; Matter of Fischer, supra; Matter of Durand, 250 N. Y. 45, 53-54, supra; Matter of Phillipson, 4 A D 2d 245, affd. 5 N Y 2d 920). Whether the remainders can be accelerated or must be distributed as in intestacy, actually makes no difference because the same persons or their estates share. As hereinafter determined, the remainders of the paragraph fourth trust vested in testator’s distributees as of the date of his death. Being vested, the remainders may be accelerated. (Kalish v. Kalish, 166 N. Y. 368; Matter of Eveland, 284 N. Y. 64; Matter of Lanier, 196 Misc. 96, 104.)
That brings us to the question of the effect of the 1916 and 1938 agreements and the prior decrees on accounting. It is obvious that the possibility of the trusts established in subdivisions (a) and (b) of paragraph third being invalid was known at the time of testator’s death. His sister, Hattie, was then 55 years old and his sister, Jennie, was 48 years of age, and both were unmarried. The same possibility continued through the executors’ accounting in 1913; the accounting of Louis N. Kramer, deceased executor and trustee in 1932 and the accounting of Hattie Newhouse, deceased trustee, in 1952. Although the period in that account ended with July 1, 1950, a few days before Hattie’s death, the petition recited the death of Laura Newhouse Irwin on December 15, 1950. Upon her *1032 death both of the trusts in subdivisions (a) and (b) of paragraph third has been held for two lives, namely, Hattie and Laura for the subdivision (a) trust and Jennie and Laura for the trust in subdivision (b). No party to these proceedings raised the question or requested a construction thereof. (A construction of the investment powers of the successor trustee under pars, third and fourth was requested in the 1952 accounting.)
The attitude of the parties was reflected in the agreements which they had executed. The 1916 agreement varied the disposition of the income of the residuary trust created in paragraph fourth of the will. The parties changed the terms of the will even more in the 1938 agreement. Testator’s niece, Buth, had then died and her daughter was entitled to the principal of the trust under subdivision (f) of paragraph third. Instead of taking it, she agreed upon a payment of $500 on account and to allow the balance to remain with the fiduciary * ‘ until such time as there shall be a general division and distribution of the principal of the trusts under paragraph ‘ Third ’ and ‘ Fourth ’ of said will upon the death of Laura Newhouse Irwin and Ella Newhouse Langfeld.” The disposition of the income of the trusts under paragraphs third and fourth, until the termination of the trust under paragraph fourth, was changed again from the provisions in the will. The agreement provided that in the event that Hattie or Jennie predeceased Laura or Ella, then the share of the income that Hattie or Jennie “ at the time of her death shall have been entitled to receive hereunder ’ ’ shall be paid in equal shares to the other three sisters, “ or the survivor or survivors of them.”
The court determines that the parties are bound by these agreements as to the changed distribution of income (Matter of Pember, 184 Misc. 737). The estate of Buth Babette Mayer is further bound by the 1938 agreement, which she executed, as to the principal of the trust created in subdivision (f) of paragraph third of the will remaining in the residuary trust under paragraph fourth until the death of Ella Newhouse Langfeld.
However, any attempt by the parties to the agreements to validate what would be invalid trusts is not binding. “ The statute limiting the suspension of the absolute ownership is an expression of the public policy of the state (Matter of Walkerly, 108 Cal. 627, 659).” (Carrier v. Carrier, 226 N. Y. 114, 122.)
In Church v. Wilson (152 App. Div. 844, affd. 209 N. Y. 553) it was stated at page 852: “ Moreover, if the 7th clause of this will could not be sustained because containing an unlawful restraint upon alienation, it could not be validated by agree *1033 ment of the parties. The statute can no more be violated by agreement of the parties than by will. It represents the public policy of the State, and is not such a statute as may be waived by interested parties on the theory that it was made for their benefit. ’ ’
Surrogate Foley stated in Matter of Morrison (173 Misc. 503, 509): “ It is asserted that all the parties have expressly consented to the setting up of the trust, the payment over to the trustees of cash for working capital and to the continuation of the business by the trustees. Their conduct in so doing adds nothing to the will. The statute can no more be violated by agreement than by the testamentary directions. The statute against perpetuities represents the public policy of the State and may not be waived or disregarded. Neither the consent of the parties nor an alleged estoppel against them can prevent an adjudication of invalidity of the entire trust under the duty of the court. (Carrier v. Carrier, 226 N. Y. 114, 122; Bailey v. Buffalo L., T. & S. D. Co., 213 id. 525; Matter of Schaefer, 110 Misc. 628; 112 id. 308; Church v. Wilson, 152 App. Div. 844; affd., 209 N. Y. 553.) Payments, however, made by the trustees upon the express consent of the persons interested during the period of management and up to the time of adjudication of invalidity may not be recouped. (Bailey v. Buffalo L., T. & S. D. Co., supra.) ”
In Atlantic Nat. Bank v. St. Louis Union Trust Co. (357 Mo. 770) an alleged trust had been administered for over 40 years but was declared void ah initio because it violated the statute. The court stated (p. 782): “ The doctrine of estoppel by acceptance or ratification of an instrument does not apply at all to an instrument void for violation of a mandate of the law and no conduct can be invoked as an estoppel against asserting its invalidity.”
The question of invalidity not having been presented to the court in the prior accounting proceedings, the decrees entered therein are not res judicata or operative as an estoppel. In Bailey v. Buffalo Loan, Trust & Safe Deposit Co. (213 N. Y. 525) the plaintiff had been one of the executors of his father’s estate. The executors accounted and turned over the funds to the defendant as trustee. It administered the trust for many years making certain annuity payments provided for in the will and paying the balance of the income to the plaintiff. He subsequently sued to have the trust under the will declared void and was successful. It was held that the trust was wholly void under the perpetuity statute. Defenses of laches, estoppel and the Statute of Limitations were pleaded but to no avail. The *1034 court stated at pages 539-540: “ The defendants cannot defeat this action upon the ground of estoppel by reason of the proceedings in the Surrogate’s Court upon the probate of the will and the decree on the final accounting in connection with the alleged acquiescence of plaintiff in the distribution of the income. Upon the probate of the will or upon the final accounting by the executors, the surrogate was not asked to, neither did he construe the provisions of the will of the testator. The only issues determined by the surrogate were, first, the capacity of the testator to make a will and that the same was properly executed; secondly, that the executors had properly accounted for all of the property of the testator. The right of plaintiff to the amount of the trust fund as residuary legatee by reason of the invalidity of the fourth clause of the will was not an issue before the surrogate or determined by him in either of the proceedings. The decrees made by the surrogate did not involve the questions at issue in this action, and were not operative as an estoppel. (Rudd v. Cornell, 171 N. Y. 114.) ”
Testator directed in paragraph fourth that upon the deaths of his sisters, Ella Newhouse Langfeld and Laura Newhouse Irwin that ‘1 said trust shall cease and that said residuary estate so invested as aforesaid shall be distributed according to the laws of the State of New York as though I had died intestate as to said residuary estate.” Respondent Edwin K. Markley, the grandnephew of decedent, and his only possible distributee upon the termination of the trust, contends that distribution should be as of the termination date. Respondents deriving interests through him (or his mother) take the same position. Petitioner and the other respondents argue that the date of death of the testator is to be used. Testator’s distributees as of that date were his mother, one brother, five sisters and two nieces.
The court holds that the date of death controls. In Matter of White (213 App. Div. 82) it was stated at page 85: “ The general rule of testamentary construction is, that in the absence of a clear distinction to the contrary, the class described by the testator as heirs and next of kin, to whom a remainder interest is given by the will, is to be ascertained as of the time of his death. This construction is not changed by the fact that a life estate may precede the bequest to the heirs at law or next of kin, nor by the circumstance that the bequest to such heirs or next of kin is contingent on an event that may or may not happen. There must be a clear intention manifested by the will to make a different disposition of the property where the bequest is to heirs at law and next of kin to take it out of the rule that heirs *1035 at law and next of kin so described will be determined as referring to those who are such at the time of testator’s death. The reason for the rule is said to be that the words cannot be used properly to designate anybody other than those who answer to the description at the time of testator’s death. It is said that such a mode of ascertaining the beneficiary implies that the testator has exhausted his specific wishes upon the previous limitations and is content thereafter to let the law take its course.”
In Matter of Bump (234 N. Y. 60, 64-65) the will construed read: “ Subject to the foregoing provisions, I give, devise and bequeath the corpus of my estate, or what is left of it after the death of my wife, to such persons as would be entitled to the same as my heirs under the intestate laws of the State of New York absolutely.” The court held that it meant decedent’s heirs as of the date of his death in 1907 and stated: “ We have, therefore, a devise and bequest to heirs. Primarily, this word is to be interpreted in its natural sense — those who are heirs at the death of the testator. (Nelson v. Russell, 135 N. Y. 137.) It is only when a contrary intention appears that this presumption fails.”
In Matter of Thomas (128 Misc. 260, affd. 218 App. Div. 755, affd. 245 N. Y. 550) the will provided upon the death of the two measuring lives that the “ residuary estate be distributed among my heirs at law according to the Statute of Distribution of the State of New York.” It was held that the fund was distributable to the estates of those who were her next of kin at the time of the death of testatrix. The Surrogate stated at page 262: “ The will is a simple one, and the intention of the testatrix is clearly expressed. This is not a case of ambiguous language, or the creation of contingent remainders, where the 1 divide and pay over ’ rule must be invoked to aid construction. The remainders given by the 8th paragraph of the will are vested remainders. (Real Property Law, § 40; Matter of Tienken, 131 N. Y. 391.) While the gift of the remainder is contained in a direction to distribute the fund upon the termination of the trust, there is nothing in the will to indicate any intention on the part of the testatrix to postpone vesting, or to make participation therein contingent upon survivorship. (Robinson v. Martin, 200 N. Y. 159; Riker v. Gwynne, 201 id. 143.) This conclusion is amply justified by the express language of the will. In paragraph 7 the testatrix provides for the payment of the income of the trust to the survivors of the four beneficiaries, but in the 8th paragraph no reference to survivorship is made in disposing of the principal. In my opinion this is sig *1036 nificant and controlling. It is well settled that the words ‘ heirs at law 5 or ‘ next of kin ’ used in a will refer primarily to those answering that description at the date of testator’s death, unless a contrary intention appears. (Matter of Bump, 234 N. Y. 60; U. S. Trust Co. v. Taylor, 193 App. Div. 153; affd., 232 N. Y. 609; Matter of White, 213 App. Div. 82.) ” (See, also, Matter of Slavens, 4 Misc 2d 82, and cases cited therein; Matter of Both, 234 App. Div. 474.)
The decree dated January 6, 1913 settling the account of the executors authorized them as trustees to retain a mortgage of $215,000 with interest at the rate of 5% per annum for the payment of $10,000 net annually to testator’s mother. It appears that the trustee originally comingled the principal of the annuity fund and the trusts made under paragraph third. The sum of $15,000 was collected on the principal of this mortgage on January 12, 1914 which was prior to the death of the annuitant. In its account, the petitioner suggested that this sum of $15,000 be allocated to the paragraph third trusts. Objection to such allocation was made by respondent Merkley and the petitioner states that such objection is properly taken and that the schedule of the account should be amended accordingly. The court agrees. The mortgage in its original amount of $215,000 earned just sufficient income to pay $10,000 yearly to testator’s mother after deducting expenses and commissions. A change in the nature of the investment would not justify a reduction in the principal fund so set aside (Matter of Kohler, 231 N. Y. 353, 376). The court, therefore, holds that the principal of the annuity fund was $215,000 and that amount plus any accumulated income passed to the trust under paragraph fourth upon the death of testator’s mother. A hearing on the objections contained in respondents’ answers will be held on the 19th day of January, 1961 at 10:30 a.m.